Daniel S.  Szalkiewicz, Esq.  (DS2323)
Cali P. Madia, Esq.
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
23 W. 73rd Street, Suite 102
New York, NY 10023
*Attorneys for the Creditor Trump Village Section 4, Inc.*
*and Igor Oberman*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In Re:<br><br>        Jacob Vaynshteyn,<br><br><br><br>                                     Debtor. | Chapter 7 Case No. 1-26-40732-ess |
| Trump Village Section 4, Inc. and Igor Oberman,<br><br><br>                                     Plaintiffs,<br><br>        -against-<br><br>Jacob Vaynshteyn<br>Comfort Inn<br>150 20th Street<br>Brooklyn, NY 11232<br><br><br>                                     Defendant. | Adversary Case No.<br><br>Bankruptcy Judge |

**COMPLAINT TO DETERMINE THAT SPECIFIED DEBT IS NONDISCHARGABLE**

Plaintiffs' Attorneys for the Creditor Trump Village Section 4, Inc. ("TV4") and Igor

Oberman ("Oberman" and, with TV4, "Plaintiffs") by and through the undersigned counsel, as

and for their Complaint against Defendant Jacob Vaynshteyn ("Vaynshteyn" or "Defendant"),

respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This adversary proceeding seeks a determination that the debts owed by Defendant-Debtor Vaynshteyn to Plaintiffs are excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) as debts for willful and malicious injury.

2. TV4 is a 1,144-unit residential cooperative complex located in Coney Island, Brooklyn, New York. Oberman is TV4's General Manager and Assistant Secretary. Defendant is the administrator of the Estate of Anna Vaynshteyn, his deceased mother, who was a former resident of TV4. Defendant is not a shareholder of TV4, is not a party to any proprietary lease, and has no legal right to reside on or access TV4's premises.

3. After his mother's death on December 31, 2020, Defendant was given the opportunity to apply to purchase her cooperative unit. The board denied his application. Despite this denial, Defendant unlawfully continued to reside in the apartment until April 2023, when TV4 commenced a holdover proceeding against Defendant, which was resolved by a March 11, 2024 stipulation of settlement granting TV4 a final judgment of possession and requiring Defendant to vacate the premises by June 14, 2024.

4. Rather than comply with the stipulation, Defendant embarked on a deliberate and escalating campaign of trespass, harassment, vandalism, defamation, and litigation abuse directed at Plaintiffs and TV4's elderly residents.  Defendant's conduct during this campaign was willful, malicious, and designed to cause maximum harm in retaliation for TV4's denial.

5. In or about May 2025, Defendant moved back into TV4 in direct violation of the stipulation and the judgment of possession. After TV4 deactivated the key fob belonging to his deceased mother, Defendant obtained a lost or stolen key fob and used it to trespass on TV4's property at least 191 times between May 19, 2025 and July 21, 2025. Defendant's unauthorized entries were knowing, deliberate, and in defiance of a court order. He vandalized TV4's

property, rang residents' doorbells at late hours — including 9:00 p.m. on a Sunday night — causing fear among TV4's elderly shareholders, unlawfully entered the management office causing a disturbance that required security intervention, and physically confronted members of TV4's board of directors.

6. Defendant also waged a campaign of defamation against Plaintiff Oberman. On or about July 30, 2025, Defendant mailed a 25-page packet to TV4 board members in which he falsely accused Oberman of exhibiting "textbook sociopathic behavior," being "a serious danger and threat to every shareholder," and having a "long-detailed history of harassment, corruption, scandal, and a ready willingness to step on others." Defendant threatened the board that failure to terminate Oberman would make them "individually and collectively complicit" and "responsible for engaging in a civil conspiracy, as well as aiding/abetting wrongful acts." These statements were knowingly false, made with actual malice, and designed to destroy Oberman's employment relationship with TV4. Defendant also went door to door soliciting shareholders to sign a petition against Plaintiffs.

7. When this strategy did not succeed, Defendant further weaponized the judicial system against Plaintiffs, filing a baseless small claims action which was ultimately dismissed on September 30, 2025. He also filed a Housing Court petition falsely alleging that Plaintiffs used or threatened force, changed locks, and harassed him. He filed a 55-page order to show cause accusing TV4 of "retaliatory lawfare." Defendant additionally filed serial motions designed not to obtain legitimate relief but to burden Plaintiffs with litigation costs, obstruct enforcement of the stipulation and judgment, and coerce TV4 into allowing his continued unlawful possession of the premises.

8.      Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on February 17, 2026.  Plaintiffs commenced this adversary proceeding to ensure that Defendant cannot use the bankruptcy process as yet another instrument of abuse — this time to extinguish the debts arising from his intentional and malicious misconduct.

9.      Defendant's injuries to Plaintiffs were not the inadvertent byproduct of careless behavior but instead were the deliberate objective of a sustained campaign. Defendant additionally knew he had no legal right to enter TV4's premises, yet he trespassed 191 times using a stolen access device. More so, Defendant knew his statements about Oberman were false, yet he published them to the board and solicited shareholders to act on them.  Defendant even continued to file an Order to Show Cause in a case that had already been dismissed. Each of these acts was undertaken with the deliberate intent to injure Plaintiffs, and each was wrongful and without just cause or excuse.

10.     Defendant should not be permitted to shed the consequences of his deliberate misconduct through the discharge.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 29 U.S.C. § 1132(e)(1) and (f). This adversary proceeding relates to the above-captioned case under Chapter 7 of the Bankruptcy Code, which is pending in the United States Bankruptcy Court for the Eastern District of New York.  Plaintiff requests that the determination on the merits occur in the Supreme Court, Kings County.

12.     This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

14.     Plaintiff TV4 is a coop located of the County of Kings, State of New York.

15.     Plaintiff Oberman is a resident of the County of Richmond, State of New York.

16.     Defendant Jacob Vaynshteyn is a resident of the County of Kings, State of New York.

## FACTUAL BACKGROUND

17.     TV4, a 1,144-unit cooperative complex in Coney Island, Brooklyn, and its General Manager Oberman, commenced an action in Kings County Supreme Court against Defendant Vaynshteyn, the administrator of his deceased mother's estate.  Vaynshteyn is neither a resident nor a shareholder of TV4.

18.     After his mother's death on December 31, 2020, TV4 gave Vaynshteyn the opportunity to purchase the unit, but the board denied his application, finding him unqualified.  Despite this, Vaynshteyn continued to reside in the apartment, prompting TV4 to initiate a holdover proceeding in April 2023.  The parties resolved that proceeding via a March 2024 stipulation granting TV4 a final judgment of possession and requiring Vaynshteyn pay maintenance, list the unit for sale, and vacate by June 14, 2024.

19.     The underlying Complaint alleges Vaynshteyn violated the stipulation by moving back into TV4 on or about May 19, 2025.  After TV4 deactivated his mother's key fob, Vaynshteyn allegedly obtained a lost or stolen fob and used it to trespass on the property at least 191 times between May 19 and July 21, 2025.  He is further accused of vandalizing property, ringing residents' doorbells at late hours causing fear, entering the management office and causing a disturbance requiring security, and physically confronting board members.

20.     On July 30, 2025, Vaynshteyn mailed a 25-page packet to board members calling Oberman a "sociopath," accusing him of "harassment, corruption, scandal," and threatening the board with complicity in civil conspiracy if they did not terminate Oberman.  He is also accused of going door to door soliciting shareholders to sign a petition against Plaintiffs.

21.     Plaintiffs further allege Vaynshteyn filed a series of meritless legal actions, including a small claims suit dismissed on September 30, 2025 which Vaynshteyn tried to reopen through an Order to Show Cause which was later denied as moot, a Housing Court petition containing false allegations of force and lock changes, and multiple orders to show cause — including a 55-page filing accusing TV4 of "retaliatory lawfare."

22.     The Complaint asserts seven causes of action: (1) tortious interference with Oberman's employment contract; (2) defamation of Oberman (libel per se); (3) trespass to land; (4) private nuisance; (5) conversion of the key fob; (6) abuse of process; and (7) malicious prosecution based on the dismissed small claims action.

23.     Plaintiffs seek compensatory and punitive damages, permanent injunctive relief, a declaratory judgment that Vaynshteyn's statements are false, attorneys' fees, and costs.

24.     Defendant declared bankruptcy just a few months after Plaintiffs filed a Motion for Default Judgment in their case against him.  Defendant is well aware of the case against him as he has listed it in Part 4 of his filing and marked that it remains pending.

25.     Plaintiffs filed a Summons with Notice on August 11, 2025.  A copy of the Summons with Notice is annexed hereto as **Exhibit 1**.

26.     Defendant was served with the Summons with Notice by substitute service.  A copy of the Affidavit of Service is annexed hereto as **Exhibit 2**.

27.     On September 11, 2025, "I. Ogunka" appeared in this case on behalf of Defendant, filing a Notice of Appearance and Demand for Complaint.  Plaintiffs further received a Notice of Appearance and Demand for Complaint from Vaynshteyn A copy of these documents are annexed hereto as **Exhibit 3**.

28.     On October 7, 2025, Plaintiffs filed a summons and complaint against Defendant. A copy of this Complaint is annexed hereto as **Exhibit 4**.

29.     When Defendant did not answer or otherwise respond to the complaint, Plaintiffs filed a Motion for Default Judgment.  A copy of the motion is annexed hereto as **Exhibit 5**.

30.     The motion has not yet been decided, however, just a few short months after its filing, Defendant filed for bankruptcy.

<u>**COUNT I**</u>
<u>**Liquidation of Debt**</u>

31.     Plaintiffs incorporate by reference herein and reallege all the averments contained in the above paragraphs of this Complaint.

32.     Defendant filed his Voluntary Petition under Chapter 7 prior to the Supreme Court of the State of New York entering a judgment on his debt.

33.     The filing of the Petition under Chapter 7 stayed the state court action.

34.     Plaintiffs have sustained damages based on Defendant's conduct in an amount as yet undetermined, plus interest, attorney's fees and costs.

35.     Defendant has more than $310,101.74 in assets and liabilities of just $43,879.17. The sole reason he is declaring bankruptcy is to avoid financial responsibility for the case brought against him by Plaintiffs.

36.     The debt rightfully belongs to Plaintiffs.

37.      Plaintiffs request that this Court determine the proper sum of that nondischargeable debt within the course and scope of this adversary matter

**COUNT II**
**Nondischargeability of Debt – 11 U.S.C. § 523(a)(6)**

38.      Plaintiffs incorporate by reference herein and reallege all the averments contained in the above paragraphs of this Complaint.

39.      Section 523(a)(6), 11 U.S.C. §523 (a)(6) provides, in pertinent part, that a discharge under sections 727 or 1141 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity...."

40.      A willful injury occurs when the actor intends to cause the consequence of the act, or believes injury is substantially certain to occur as a result of his behavior (In re Williams, 579 BR 314, 325 [SDNY 2016]).

41.      "Malicious" includes actual and constructive malice (In re Stelluti, 94 F3d 84, 88 [2d Cir 1996]).

42.      Constructive malice may be demonstrated "by the acts and conduct of the debtor in the context of the surrounding circumstances" (Id.).

43.      More so, "the element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor" (In re Bressler, 387 BR 446, 454 [SDNY 2008]).

44.      A court may consider circumstantial evidence in determining what the debtor may have known when taking the action that produced the injury (See Id.).

45.      Defendant's conduct falls squarely within the §523(A)(6) definition of "willful" and "malicious."

46.     Defendant has engaged in a relentless course of harassment against Plaintiffs through filing frivolous lawsuits and court documents, disseminating false statements, harassing TV4 residents, and generally diverting time and resources away from the cooperative and toward combating a disgruntled rejected applicant intent on inflicting revenge on Plaintiffs.  Defendant's motive was not innocent, it was malicious and it was retaliatory.

47.     As the Complaint against Defendant outlines, his conduct was tortious.  He is currently being sued for Tortious Interference with Contract/Prospective Economic Advantage on behalf of Oberman, Defamation on behalf of Oberman, Trespass to Land, Private Nuisance, Conversion, Abuse of Process on behalf of TV4, and Malicious Prosecution.

48.     Bankruptcy courts have found similar actions to be nondischargable.  (See *Zaretsky v Berlin (In re Berlin)*, 513 BR 430 [Bankr EDNY 2014]).

49.     In *Pagones*, the court concluded that the "intentional tort of defamation may constitute "willful and malicious injury" by the debtor to another entity under § 523(a)(6) of the Bankruptcy Code, as long as the debtor knew the published statements were false." (*Pagones v Mason (In re Mason)*, 1999 Bankr LEXIS 90, at *8 [Bankr SDNY Jan. 28, 1999, Chapter 11, Case No. 95 B 41537 (JLG), Adv. Proc. No. 95/1653A]).

50.     In *In re Salem*, the court analyzed a case sounding in malicious prosecution, abuse of process, defamation, libel and slander which was decided on default judgment (*Neshewat v Salem (In re Salem)*, 290 BR 479, 481 [SDNY 2003]).  Despite Defendant not appearing in the underlying action, the Southern District ultimately held the debt nondischargeable as the plaintiff had proved "by a preponderance of the evidence that Salem willfully and maliciously injured him" (*Id.,* 485).  Discussion of the defendant's conduct is eerily similar to the conduct alleged in this case, and includes "criminal complaints, civil suits and prosecution against [plaintiff]

including two state court actions, at least one proceeding in surrogate's court, voluntary testimony in a Michigan federal court preliminary hearing and over 100 phone calls to the Town of East Fishkill Police Department lodging complaints against [plaintiff]" (*Id.*, 485-486).

51.    Here, Defendant initiated multiple litigations in multiple courts, attempted to revive at least one when it had already been dismissed; trespassed at least 191 times between May 19, 2025 and July 21, 2025; vandalized TV4; and sent defamatory packages to board members.

52.    Based on the forgoing, the Court should find that any potential debt to Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(6).

## RESERVATION OF RIGHTS

53.    Plaintiffs repeat and re-allege the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

54.    Plaintiffs do not waive and instead specifically reserve all of her rights, claims, and defenses as they pertain to Defendant and to defend against any claims or liens that Defendant may assert.  Plaintiffs expressly reserve the right to amend and supplement this Complaint or to commence a new action against Defendant with other claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in her favor and against Defendant by entering an order: (1) determining that, pursuant to 11 U.S.C. §523(a)(6), the debts owed by Defendant to Plaintiff arising from the actions complained of in

the Complaint are excepted from discharge and for such other relief as the Court deems just and

proper.

Dated:    April 14, 2026
          New York, New York

                              Veridian Legal P.C.

                              /s/Daniel Szalkiewicz
                              By:    Daniel S.  Szalkiewicz, Esq.  (DS2323)
                              Cali P. Madia, Esq.
                              23 W. 73rd Street, Suite 102
                              New York, New York 10023
                              *Attorneys for Plaintiffs*