**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In Re:* | Case No.: **1-26-40732-ess** |
| | Chapter: 13 |
| **Jacob Vaynshteyn** | |
| | **AFFIRMATION IN OPPOSITION TO DEBTOR'S** |
| Debtor | **MOTION TO ENFORCE THE AUTOMATIC** |
| | **STAY AND DECLARE POST-PETITION UCC** |
| | **FORECLOSURE SALE VOID AB INITIO** |

ANDREAS E. CHRISTOU, ESQ., an attorney admitted to practice before the Courts of

the State of New York and the United States District Court for the Eastern District of New York,

hereby affirms under the penalty of perjury as follows:

1.      I am an attorney associated with Woods Lonergan PLLC, attorneys for Interested

Party TRUMP VILLAGE SECTION 4, INC. ("Cooperative")[1] herein.

2.      I make this affirmation in opposition to the motion of the Debtor Jacob

Vaynshteyn ("Debtor") seeking *inter alia* (i) enforcement of the automatic stay pursuant to 11

U.S.C. § 362(a), (ii) an order declaring the post-petition UCC foreclosure sale of the Debtor's

cooperative shares and proprietary lease void ab initio, (iii) injunctive relief pursuant to 11

U.S.C. § 105(a) and Fed. R. Bankr. P. 7065 prohibiting any further transfer or disposition of the

subject property, (iv) damages pursuant to 11 U.S.C. § 362(k) for willful violation of the stay.

3.      For the reasons set forth herein, the Debtor's motion should be denied in its

entirety.

**BACKGROUND, DEFAULT, AND NON-JUDICIAL FORECLOSURE SALE**

*A. Background*

4.      Debtor's motion presents a skewed narrative that evades reality and omits critical

details, Court rulings, and key facts which paint an inaccurate picture to the Court of Debtor's

---

[1] The Cooperative is a creditor of the Estate of Anna Vaynshteyn, not of the Debtor; therefore, it is an "Interested
Party" within the context of this proceeding.

purported rights in this matter. For example, the Debtor neglects the years long history of this apartment unit and appears to intentionally omit from its motion any mention of the fact that the Proprietary Lease has been terminated for several years, and that Debtor was lawfully evicted from the subject Apartment, losing any possessory rights.

5.      The Debtor is not, nor ever was, a shareholder nor a proprietary lessee of the Cooperative. It was his mother, Anna Vaynshteyn, who was the shareholder-lessee.

6.      On or about September 26, 2007, Anna Vaynshteyn ("Anna" or "Decedent"), the Debtor's mother, became the owner of 20.5 shares in the Cooperative and a proprietary lessee with an interest appurtenant to the cooperative apartment located at 2944 West 5th Street, Apartment 19B, Brooklyn, NY 11224 (the "Apartment"). *See* Exhibit A for the Stock Certificate and Exhibit B for the Proprietary Lease (also known as the Occupancy Agreement).

7.      Anna passed away on or about December 31, 2020. *See* Exhibit C.

8.      On or about October 2, 2021, Jacob Vaynshteyn was appointed Executor of the Estate of Anna Vaynshteyn (the "Estate"). *See* Exhibit D.

9.      On or about December 17, 2021, the Cooperative Board of Directors, in its business judgment, denied the application of Jacob Vaynshteyn to be transferred the shares and Lease to the Apartment. *See* Exhibit E.

10.     After the denial of his application, **the Estate had more than four (4) years to independently sell the subject Apartment and refused to make meaningful efforts to do so.**

11.     Thereafter, the Estate's Proprietary Lease was lawfully terminated due to various defaults by the Estate. *See* Exhibit F.

### B. *Landlord – Tenant Action*

12.     Subsequently, a summary eviction proceeding was commenced in Kings County Civil Court on or about April 13, 2023 entitled *Trump Village Section 4, Inc. v. Jacob Vaynshteyn et al* under index LT-311758-23/KI (the "Landlord-Tenant Action"). *See* Exhibit G for the Notice of Petition and Petition.

13.     During the pendency of the Landlord-Tenant Action, the Estate had the opportunity to sell the Apartment and failed to do so.

14.     On or about March 11, 2024, the Cooperative and Debtor, in his capacity as Estate Executor, entered into a stipulation in which *inter alia,* the Estate would have the opportunity to sell the Apartment provided certain benchmarks were met and the Debtor vacated the Apartment. *See* Exhibit H. A Judgment of Possession was subsequently issued. *See* Exhibit I.

15.     The Estate again had through November 2025 in order to sell the Apartment and failed to take adequate steps to do so.

16.     On or about September 29, 2025, the Hon. Karen May Bacdayan, J.H.C. issued an order which found that Debtor, for the Estate, after a hearing on the issue, was listing the Apartment at $599,000.00 despite its market value only being approximately $375,000.00, and despite Debtor representing to the Surrogate's Court the value of the Apartment was $400,000.00. The Court found:

> Beginning at 10:24 on the record, respondent at first did not respond cogently to the court's direct question of whether he was willing to sell the subject cooperative apartment. When asked more specifically if he is willing to enter into a contract of sale, respondent was ambivalent. Respondent indicated that he will not contract to sell the apartment for any less than $599,000. The court questions whether this is reasonable.

> See Exhibit J.

17.     The Court subsequently granted the Estate a further opportunity to sell the Apartment, ordering the Debtor by November 29, 2025 to provide evidence "that he has

3

contracted to sell the apartment, or demonstrate significant progress toward same to petitioner (e.g. application for mortgage by intended buyer, completed, Board package for approval of proposed buyer)." *Id.*

18.     Debtor failed to comply with the Court's order.

19.     Thus, an eviction occurred and Debtor was evicted from the Apartment on or about December 16, 2025. Debtor was lawfully evicted and has no further possessory rights in the Apartment. *See* Exhibit K.

20.     In connection with the Landlord-Tenant Action, the Debtor stated in a sworn affidavit that he had not resided in the Apartment since June 14, 2024. *See* Exhibit L.

21.     On or about January 21, 2026, the Hon. Karen May Bacdayan, J.H.C. issued a further Order denying the restoration of Debtor to possession of the Apartment after the eviction, finding that Debtor did not comply with the prior Court order of September 29, 2025, stating that Debtor "claims, without proof, that he lowered the price on the apartment and made efforts through a broker to sell the apartment. However, respondent was required to demonstrate to petitioner prior to November 26, 2025 that he had done so, and there is nothing in the record to demonstrate this is true." *See* Exhibit M.

22.     The Court further stated, after numerous misrepresentations made by Debtor to the Court that, regarding Debtor "**respondent has squandered all credibility with this court. No further orders to show cause will be signed.**" *Id.*

**C.  *Supreme Court Shareholder Proceeding***

23.     After the Court denied the Debtor relief on September 29, 2025, the Debtor went to Supreme Court and filed a Petition seeking to compel the Cooperative to call a special meeting

of shareholders and challenging certain actions of the Board of Directors. *See* Exhibit N for the Order to Show Cause.

24.     The Court, on February 4, 2026, denied the Debtor's order to show cause for lack of standing. Specifically, the Hon. Katherine A. Levine, J.S.C., held in relevant part, that:

> "'On March 11, 2024, the parties settled this holdover proceeding pursuant to a stipulation of settlement, whereby [Trump Village Section 4] was awarded a final judgment of possession with a warrant of eviction…' There is a pending foreclosure sale scheduled for February 17, 2026. ***As such, Petitioner has no interest in the acts of the board*** and the motion is denied."

*See* Exhibit O.

25.     That Court held that because of the termination of the Proprietary Lease, the **Petitioner-Estate does not have standing as a shareholder of the Cooperative.** *Id.*

### D.  *Nonjudicial Foreclosure Auction*

26.     On or about January 7, 2026, the Cooperative served upon the Estate and the Debtor a Notice of Sale and Notice of Disposition of Collateral. *See* the annexed notices with proof of service at Exhibit P.

27.     The nonjudicial foreclosure sale was scheduled for February 17, 2026 at 12:00 p.m.

28.     On the eve of the foreclosure sale, the business day prior to the sale, the Debtor filed a further action in Supreme Court under the index 505513/2026 in the action entitled *Jacob Vaynshteyn et al v. Trump Village Section 4, Inc*. The Court appeared not to have considered the Debtor's order to show cause application before the scheduled auction time, thus resulting in a rejection of the order to show cause. *See* Exhibit Q.

29.     At 11:37 a.m. on February 17, 2026, the Debtor filed a petition for Chapter 13 Bankruptcy. His counsel filed notice of this filing at 11:44 a.m., 16 minutes before the scheduled

nonjudicial foreclosure sale. *See* Exhibit R. At 11:48 a.m., 12 minutes before the sale, Debtor's counsel sent an email to the undersigned. *Id.*

30.    The Cooperative proceeded with the nonjudicial foreclosure sale at 12:00 p.m. that day.[2]

31.    An individual named Nethaniel Bouskila was the successful bidder at the nonjudicial foreclosure auction for the upset price of $192,000.00 and executed the Terms of Sale. *See* Exhibit S.

32.    Subsequently, the Cooperative exercised its right of first refusal as provided in its By-Laws and returned the down payment to the auction bidder. *See* Exhibit T for the notice and Exhibit U for the By-Laws.

33.    The stock certificate has not been formally transferred to the Cooperative, and no closing completed, pending determination of the instant motion.

**DEBTOR IS NOT THE SHAREHOLDER OF THE COOPERATIVE; THE ESTATE, WHICH CANNOT FILE BANKRUPTCY HAD AN INTEREST IN THE STOCK THAT TERMINATED ONCE THE LEASE WAS TERMINATED**

34.    It is well-established that a probate estate "is not eligible to be a debtor under any chapter of the Bankruptcy Code." *In re Morris*, No. 1-25-45432-JMM, 2026 WL 740222, at *3 (Bankr. E.D.N.Y. Mar. 16, 2026); *See also* 11 U.S.C. §101(41). "[A] probate estate is not a person under the Bankruptcy Code." *In re Est. of Baer*, No. 23-73607-AST, 2024 WL 234134, at *2 (Bankr. E.D.N.Y. Jan. 19, 2024).

35.    ""By its terms, section 362 applies only to debtors, property of the debtor, or property of the estate, and does not apply to stay proceedings against non-debtors." *In re*

---

[2] The undersigned personally was present at the February 17, 2026 auction held at the Kings County Courthouse and not in his office at the time of filing. While the 12:00 p.m. auction was already underway, the undersigned learned of the bankruptcy filing by seeing Counsel's 11:48 a.m. email.

*Stillwater Asset Backed Offshore Fund Ltd.*, 565 B.R. 42, 46–47 (S.D.N.Y. 2017), *aff'd,* 729 F. App'x 69 (2d Cir. 2018). "Whether the debtor has a legal or equitable interest in property such that it becomes "property of the estate" under section 541 is determined by applicable state law." *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006).

36.    As shown on the stock certificate, annexed as Exhibit A, it is expressly stated that "the rights of any holder(s) hereof are subject to the Certificate of Incorporation and Bylaws of the Corporation and to the provisions of a certain Proprietary Lease made between the person(s) in whose name(s) this certificate is issued, as Lessee(s) and the Corporation, as Lessor…"

37.    "A cooperative's proprietary lease and appurtenant shares are inseparable. Indeed, cooperative shares have no value independent of the proprietary lease." *In re Roswick*, 231 B.R. 843, 857 (Bankr. S.D.N.Y. 1999) (internal citations omitted). "Unlike the common understanding of the term "stock," the shares of "stock" in the Apartment Corporation are not freely transferable, and they have no value independent of the Lease for the Apartment." *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 517 (2d Cir. 1989). "Inseparably joined, neither the corporate nor the leasehold attributes of the relationship can be viewed in isolation from one another." *Fe Bland v. Two Trees Mgmt. Co.*, 66 N.Y.2d 556, 563, 489 N.E.2d 223, 227 (1985).

38.    As set forth in the By-Laws, Article VII, Section 3: "The Corporation shall be entitled to treat the holder of record of any share or shares of capital stock of the Corporation as the holder in fact thereof, and shall not be bound to recognize any equitable or other claim to or interest in such share on the part of any other person whether or not it shall have express or other notice thereof, except as expressly provided by the laws of the State of New York and in these By-Laws." *See* Exhibit U.

39.     As set forth in the Proprietary Lease, Section 7(b):

"If the notice as provided for in subdivision (a) hereof shall have been given and the term shall expire as aforesaid; or if the Cooperator shall make default in the payment of the carrying charges reserved herein, or any part thereof, or in making any other payment herein provided; or if the Cooperator shall sell, encumber, assign or convey or otherwise lose title to all or any part of the stock of the Housing Company which he shall own; or if any execution or attachment shall be issued against the Cooperator; or any of the Cooperator's property upon the demised premises shall be taken or occupied or attempted to be taken or occupied by someone other than the Cooperator, then and in any of such events the Housing Company may, without notice, reenter the demised premises either by force or otherwise, and dispossess the Cooperator and the legal representative of the Cooperator or other occupant of the demised premises by summary proceedings or otherwise…"

*See* Exhibit B.

40.     The stock held by the Estate was thus worthless, without a Proprietary Lease, and was deemed terminated. The Debtor had no interest in the stock as there was no interest to be had by the Estate. As purported sole heir to the Estate, any interest debtor had in conceivable Estate property would have been in the auction proceeds, which that interest did not vest until the auction's conclusion, after the filing of the Petition. Thus, at the time of the bankruptcy filing, there was no property or right that became part of the Debtor's bankruptcy estate.

41.     "Under New York law, the issuance of a warrant of eviction cancels the lease between the parties and annuls the relationship of landlord and tenant. The filing of a bankruptcy petition does not resurrect a lease, and a bankruptcy court does not have power to resurrect a lease which was terminated prior to the filing of the lessee's bankruptcy petition." *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y. 1996); *See also In re Syndicom Corp.*, 268 B.R. 26, 45 (Bankr. S.D.N.Y. 2001).

42.     Typically, upon termination of the cooperative shareholder's proprietary lease, stock certificates are to be surrendered "the lessor may issue a new proprietary lease and a new

8

certificate for the shares." *Lombard v. Station Square Inn Apartments Corp.*, 94 A.D.3d 717, 720, 942 N.Y.S.2d 116, 120 (1ˢᵗ Dep't 2012).

43.    It is well established that "[t]he automatic stay of § 362(a) protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property." *Gross Found., Inc. v. Goldner*, No. 12 CIV. 1496 ILG, 2012 WL 6021441, at *7 (E.D.N.Y. Dec. 4, 2012).

44.    While 11 U.S.C. § 541(a)(1) defines property of the estate broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case," the Debtor neither had an individual legal or equitable right in the stock alone as of the petition filing date, given the prior termination of the Proprietary Lease and lawful eviction.

45.    Here, the stock on its own had absolutely no value once the Proprietary Lease was terminated and the Cooperative regained possession of the Apartment through a lawful eviction and a judgment of possession. The termination of the Lease and the eviction forfeited the Estate's rights, as set forth in the *Bell* case below, to control the disposition of the shares. *See* Exhibits H, I, K. Therefore, the Estate had no rights or ownership interest relative to the cooperative stock at the time of the bankruptcy filing. The Estate's rights, if any, were exclusively in any surplus monies resulting from the Cooperative's nonjudicial sale of the stock and lease.

46.    In *Bell*, there is a clear example highlighting this, where the court determined that the stock interest of a shareholder was no longer after the termination of the lease:

> "The Bankruptcy Court properly lifted the automatic stay to permit the cancellation and sale of the Bell's Shares, in short, because Bell no longer retained any interest entitled to the protection of the automatic stay. Bell forfeited any legal right to possess the Apartment upon the issuance of the warrant of eviction, and also forfeited any equitable interest arising from her de facto possession of the Apartment once she was lawfully evicted. ***Finally, Bell forfeited the right to control the disposition of her Shares when***

9

*she lost the right to transfer the Lease*."

*Bell v. Alden Owners, Inc.*, 199 B.R. 451, 459 (S.D.N.Y. 1996) (emphasis added).

47.     The rights under the Decedent's, and therefore, the Estate's Stock Certificate, were expressly subject to the Proprietary Lease, which was terminated. Therefore, at the time of the bankruptcy filing, there Cooperative stock of the Estate vested no rights in the Debtor (as the sole heir of the Estate) which became a part of the Debtor's bankruptcy estate.

### GIVEN THE TERMINATION OF THE PROPRIETARY LEASE, THE LAWFUL EVICTION, THE STOCK HAVING NO VALUE, AND THE ADJUDICATED LACK OF STANDING, THE ESTATE, AND THUS DEBTOR'S INTEREST AS SOLE HEIR, IS LIMITED TO THE SURPLUS PROCEEDS RESULTING FROM THE AUCTION, NOT THE STOCK ITSELF

48.     It is not in dispute that the Debtor was not, nor has ever been, a shareholder or lessee of the Cooperative. Nor is it in dispute that through the filing of the Debtor's bankruptcy petition, that the shares were in the name of the Decedent, therefore the Estate. Nor is it in dispute that the Estate's Proprietary Lease was terminated, and that a lawful eviction occurred.

49.     Despite the Debtor concealing these facts from this Court on his motion, he did admit them under oath in his failed Supreme Court proceeding, in which he attempted to stay the sale before resorting to bankruptcy. *See* Exhibit V.

50.     As the Second Department has held:

> "Cooperative apartments are personal property, not real property. Accordingly, [a] contract for the sale of a cooperative apartment, in reality a sale of securities in a cooperative corporation, is governed by the Uniform Commercial Code. As here, where a cooperative tenant defaults…the remedies found in UCC article 9 are available to the lender."

*LI Equity Network, LLC v. Vill. in the Woods Owners Corp.*, 79 A.D.3d 26, 30, 910 N.Y.S.2d 97, 99 (2d Dep't 2010) (internal citations and quotations omitted).

51.     "Where, as here, a debtor pledges cooperative shares and a corresponding proprietary lease as security for a debt, article 9 of the UCC applies to the enforcement of the

security interest." *Walsh v. Ocwen Loan Servicing, LLC*, 217 A.D.3d 802, 804, 192 N.Y.S.3d 128, 130 (2d Dep't 2023).

52.     Pursuant to N.Y. U.C.C. §9-615(d)(1), "the secured party shall account to and pay a debtor for any surplus." N.Y. U.C.C. Law § 9-615 (McKinney).

53.     Debtor's motion claims that "the foreclosure sale permanently divested the Debtor of his sole beneficial inheritance." This is entirely untrue, as at the time of the bankruptcy, there was no value to the stock and no right to sell or possess the Apartment.

54.     The Estate's leasehold interest was lawfully terminated, and the Debtor's possessory interest was lawfully disposed of through a lawful eviction. As of December 16, 2025, the Eviction Date, the Estate no longer had any interest in the Apartment, whether legal or possessory. Neither the Estate nor the Debtor had any right to access the Apartment or otherwise transfer or sell the Apartment. Thus, the stock itself had no independent value.

55.     The Kings Supreme Court recognized that the Estate no longer had any ownership or possessory interest in the Cooperative, by dismissing the Debtor's special proceeding for a shareholder's meeting due to lack of standing. *See* Exhibit O. Thus, the Debtor, as the Estate fiduciary, has already been adjudicated as not having the legal status or standing of a shareholder of this Cooperative.

56.     What remained was the formal sale and reissuance of the 20.5 shares of stock, which alone without the accompanying leasehold interest was worthless. The Estate's interest, as of the date of the bankruptcy, was in the surplus proceeds derived from the formal sale and reissuance of new stock and lease. The debts generated by the Cooperative's lien are the Estate's debts, not the Debtor's debts.

57.     Thus, the Cooperative initiated the nonjudicial foreclosure process under the Uniform Commercial Code to, in a public forum, auction the stock and an accompanying leasehold interest to the highest bidder. The surplus, after subtracting the Cooperative's lien, costs of sale, and any other amounts recoverable under the Governing Documents or the Terms of Sale, would be returned to the Estate.

58.     Given the active bankruptcy, these could be immediately forwarded to the Chapter 13 Trustee if so directed by the Court[3].

59.     In essence, for the Debtor, as Executor of the Estate, is asking for the Court to reactivate the terminated Proprietary Lease, in order to create rights that neither Debtor, nor the Estate had at the time of the petition filing – to occupy the Apartment and to be able to dispose of the shares or sell the Apartment. These rights did not exist at the time of filing and therefore cannot be resurrected.

60.     It is well established that "the bankruptcy court cannot reinstate the landlord-tenant relationship." *In re Griggsby*, 404 B.R. 83, 92 (Bankr. S.D.N.Y. 2009). "[A] judgment of the Civil Court is given *res judicata* effect by the New York State courts and thus must be given full faith and credit by the federal courts." *Manhattan King David Rest. Inc. v. Levine*, 163 B.R. 36, 39 (S.D.N.Y. 1993).

61.     Debtor's concealing of material facts is a blatant attempt to request that this court restore rights to the Debtor that were previously adjudicated and determined long before the bankruptcy petition was filed. This is no more evident than in Debtor's request for relief, where the Debtor requests that the Court enter an order "Directing Defendants and any successors or

---

[3] Whether the Estate's surplus funds should be forwarded to the Estate's bank account or the Chapter 13 Trustee is a matter the Cooperative leaves in the discretion of the Court and Trustee, and the Cooperative stands ready to disperse any surplus funds as directed, once a closing has occurred.

transferees to immediately restore title, possession, and all incidents of ownership of the cooperative shares and proprietary lease…"

62.    Even assuming *arguendo* that the Court invalidated the February 17, 2026 nonjudicial foreclosure sale, neither the Debtor nor the Estate would have the right to occupy the Apartment, dispose of the shares, or sell the Apartment.

63.    The Estate, having their interest terminated, thereafter had no right to dispose of, transfer, lien, or otherwise encumber the stock. The Estate's interest is in the proceeds of the sale of the terminated stock and lease.

## THE CASES RELIED UPON BY THE DEBTOR ARE DISTINGUISHABLE AND INAPPLIACABLE TO THE FACTS HEREIN

64.    Debtor's motion relies upon several cases supporting Debtor's contention that the stock was Debtor's bankruptcy estate property. These cases are all factually distinguishable from the instant matter, or wholly inapplicable.

65.    The Debtor first cites to *In Re Levenstein*, which dealt with a marital real property claimed during divorce proceedings. The marital home, real property, was in the name of the non-debtor spouse, but "both the debtor and his wife contributed monetarily to the mortgage payments on the [] property throughout their marriage." *In re Levenstein*, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007). Primarily because of the real property's nature as marital property and an interest under applicable marital law, the Court held that it was "unquestionable that under the New York Domestic Relations Law, as of the petition date, the debtor had a marital interest in the Oriole property as defined by Section 236. This interest became property of his bankruptcy estate, and, along with the debtor's possessory interest in the Oriole property, was sufficient to invoke the protection of the automatic stay…" *Id.*

13

66.     Of course, none of the *Levenstein* circumstances are present herein. Even at the most basic level, Debtor himself (who was deprived of possession) claims no interest in the Apartment other than to the proceeds from any sale as the Estate's sole heir.

67.     Debtor next cites to *In Re Ebadi,* which vacated a post-petition foreclosure sale notwithstanding the debtor's lack of record title, finding an automatic stay violation occurred because "the Foreclosure Sale is a substantial step in a process that could lead to recovery of a deficiency judgment from Debtor, it falls within the contours of any act to collect, assess, or recover a claim against the debtor, which is prohibited by the automatic stay." *In re Ebadi*, 448 B.R. 308, 315 (Bankr. E.D.N.Y. 2011) (internal quotations omitted).

68.     Again, none of the *Ebadi* circumstances are present. Nor is there any risk of a deficiency judgment against the Debtor, who was neither a shareholder nor a lessee of the Cooperative. Indeed, at a baseline level, the auction sales price (Exhibit S) well exceeded the Cooperative's stated lien (Exhibit P).

69.     The Debtor next relies upon *In Re 48th Street Steakhouse,* which dealt with the affects of the automatic stay on termination of a sublease, wherein the Court held that "because Landlord's attempt to terminate I.S.H.'s lease, if successful, would have resulted in the destruction of 48th Street's subtenancy…Landlord's termination notice violated the automatic stay with respect to 48th Street and was therefore void." *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987).

70.     Here, the issues of termination of the Proprietary Lease and the loss of the Debtor's possessory rights through a lawful eviction have been fully adjudicated well before the bankruptcy filing. There are no leasehold or possessory rights which encompass the Debtor's bankruptcy estate.

71.     Debtor lastly relies upon *Kagan v. St. Vincent's Catholic Medical Centers* with an incorrect citation. Nonetheless, this action held that efforts by Kagan to maintain FOIA claims under New York law violated the automatic stay, because their purpose "was to investigate and pursue claims belonging exclusively to the bankruptcy estate." *In re Saint Vincents Cath. Med. Centers of New York*, 449 B.R. 209, 218 (S.D.N.Y. 2011).

72.     Here, no similar type issues are present herein. There was nothing Debtor had any interest in at the time of the bankruptcy filing, given the stock on its own retained no independent value and all other rights were adjudicated and terminated.

73.     As such, the Debtor's cited authority is inapposite and inapplicable to the facts and circumstances presented herein.

## DAMAGES FOR STAY VIOLATION ARE NOT WARRANTED AS THE COOPERATIVE MAINTAINS NO VIOLATION OCCURRED, AND IF ONE DID OCCUR, IT WAS NOT WILLFUL; LIKEWISE, NO INJUNCTIVE RELIEF IS WARRANTED

74.     "The party seeking damages for violation of the automatic stay must prove the following elements: (1) that a bankruptcy petition was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages." *In re Leiba*, 529 B.R. 501, 506 (Bankr. E.D.N.Y. 2015).

75.     While there is no dispute that a bankruptcy petition was filed and that the debtor is an individual; notice was received near simultaneously to the auction's occurrence. Despite knowing of the non-judicial foreclosure auction for more than six (6) weeks prior to the auction date, the Debtor waited until approximately fifteen (15) minutes before the auction to file their skeletal bankruptcy petition.

15

76.     More importantly, the Debtor cannot demonstrate that the Cooperative's actions were willful. Aside from the fact that the Cooperative is <u>not </u>a creditor of the Debtor, the Cooperative's actions cannot be categorized as willful.

77.     In an abundance of caution, due to the pendency of the bankruptcy, the Cooperative did not proceed forward with the formal transfer of the stock and lease pending this Court's determination of the Debtor's motion.

78.     The Cooperative's termination of the lease, and lawful eviction, well preceded the bankruptcy filing and cannot be restored by this motion, or this bankruptcy proceeding.

79.     The Cooperative has demonstrated a *bona fide* legal dispute at a minimum, although the Cooperative maintains that there was absolutely no violation of the automatic stay.

80.     Further, the Debtor cannot demonstrate that it suffered any damages, because the Debtor, as a sole heir, did not have any cognizable or legal interest at the time of the bankruptcy filing. As demonstrated *supra*, the Estate's interest solely in terminated stock, after the Proprietary Lease had been terminated, had no independent value, and thus no value flowed through to the Debtor as sole heir.

81.     An award of actual damages is appropriate only if there has been "a determination that any deliberate or willful act has been taken in violation of a stay where the violator had knowledge of the bankruptcy. *In re Reinhardt*, 209 B.R. 183, 187–88 (Bankr. S.D.N.Y. 1997).

82.     Even assuming *arguendo* that the Court were to find a willful violation of the automatic stay, which the Cooperative denies, there was no injury to the Estate, and therefore no injury to the Debtor. The Estate's rights in the cooperative stock were rendered valueless without the proprietary lease which has been previously terminated. In addition, the Estate maintained

16

full rights in the surplus proceeds, which could not begin to materialize until after an auction was held.

83.     Indeed, the only possible way for the Estate, and thus the Debtor as sole heir, to recognize any rights or monies would be for the auction to proceed to its conclusion – the formal transfer and sale of the stock and lease, which would yield the surplus monies available for distribution.

84.     "[T]he party seeking damages for a violation of the automatic stay bears the burden of proving that damages were actually incurred. *In re Dominguez,* 312 B.R. at 508. Where no injury results from the violation of the automatic stay, an award of damages is clearly inappropriate. *In re Sturman*, No. 10 CIV. 6725 RJS, 2011 WL 4472412, at *3 (S.D.N.Y. Sept. 27, 2011). "Violation of the automatic stay, standing alone, will not support award of damages under 11 U.S.C. § 362(h) where debtor has suffered no actual damages." *In re Siskin*, 231 B.R. 514, 521 (Bankr. E.D.N.Y. 1999).

85.     There was no injury to the Debtor, and thus no damages incurred. The Debtor did not lose out on any sale of the Apartment, since neither the Estate nor the Debtor had any legal right to sell or occupy the Apartment. The surplus proceeds remaining from the auction will be sent to the Trustee or to the Estate, as the Court may direct, and the Debtor as beneficiary of the Estate would be entitled to any estate assets (assuming the Estate had no other debts).

86.     Further, the Cooperative is not a creditor of the Debtor, nor does the Debtor owe any debt to the Cooperative. It is the Estate of Anna Vaynshteyn which owes a debt to the Cooperative; it is the Estate's debt which the auction sought to satisfy. This is noteworthy; the auction did not seek to satisfy or take any action with respect to a debt owed by the Debtor, given there was no such debt existing.

17

87.     The Cooperative further notes that after the auction, which occurred minutes after the Debtor's filing, that the Cooperative has not taken the necessary steps to formally transfer the collateral and re-issue new stock and lease, pending the Court's determination of the instant motion.

88.     As such, an award of damages pursuant to § 362(k) is not warranted.

89.     Likewise, for all of the reasons previously set forth in this opposition, the injunctive relief pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7065 requested by the Debtor "enjoining Defendants, their agents, assigns, and all persons acting in concert with them from any further transfer, disposition, encumbrance, or interference with the cooperative shares and proprietary lease pending further Order of this Court" is also not warranted.

90.     Debtor's request for injunctive relief is also further improper as it requests the Court grant injunctive relief regarding the proprietary lease, which was terminated long before this bankruptcy filing.

## DEBTOR DID NOT COMPLY WITH THE COURT'S SERVICE ORDER

91.     On a final note, the Debtor abjectly failed to comply with the Court's service mandates with respect to the instant motion.

92.     Despite filing this Petition on February 17, 2026, the Debtor filed this "emergency" motion on April 21, 2026, more than two months after the bankruptcy petition filing date.

93.     The Court's service directives were as follows:

> **ORDERED,** that the Debtor is directed to serve this Order and the Motion to Enforce Stay on which it is based via email or facsimile, or if not available by overnight delivery service, to be received by April 24, 2026, at 5:00 p.m., upon: (i) all creditors; (ii) all parties having filed a notice of appearance in this case; (iii) the Chapter 13 Trustee; (iv) the Office of the United States Trustee; and (v) any other party entitled to receive notice in this case, and service of

18

the Motion to Enforce Stay in this manner shall constitute good and sufficient service and notice of the Motion to Enforce Stay; and it is further

**ORDERED,** that the Debtor is directed to file proof of service of this Order and the Motion to Enforce Stay by April 27, 2026, at 12:00 p.m.

*See* ECF No. 19.

94. Debtor filed an affidavit of service on May 7, 2026, which states that service was done on May 6, 2026 by first-class mail to creditors and email to others. *See* ECF No. 21. This service occurred weeks after the Court's deadline and not even in the manner that the Court directed.

## **CONCLUSION**

95. For all the reason set forth in this affirmation and in the accompanying documents, the Debtor's motion should be denied in its entirety. There was no violation of the automatic stay as the terminated stock that was the subject of the Cooperative's nonjudicial foreclosure auction did not vest any value or rights in the Debtor or the bankruptcy estate.

96. Therefore, the motion should be denied, and the Cooperative be permitted to proceed with its formal transfer in order to generate surplus proceeds for the Estate and the Debtor, as sole heir.

19

WHEREFORE, the Cooperative respectfully requests that the Court enter an order denying the Debtor's motion in its entirety and granting the Cooperative such other and further relief as this Court deems just and proper.

Dated: New York, New York
         July 31, 2026

WOODS LONERGAN PLLC

Andreas E. Christou, Esq.
One Grand Central Place
60 East 42nd Street, Suite 1410
New York, NY 10165
(212) 684-2500
andreas.christou@woodslaw.com
*Attorneys for Interested Party Trump Village Section 4, Inc.*

20