# EXHIBIT B

AGREEMENT made this 26 day of Sept, 2007, between TRUMP VILLAGE SECTION 4, INC., a corporation organized pursuant to the Business Corporation Law of the State of New York, with its principal office at 2928 West 5th Street, Borough of Brooklyn, County of Kings, City and State of New York, 11224, hereinafter referred to as the "Housing Company" and

hereinafter referred to as the "Cooperator".

WHEREAS, the Housing Company has planned, constructed and developed a housing development known as TRUMP VILLAGE and Anna Vaynshteyn

WHEREAS the Cooperator has purchased or otherwise acquired the shares of capital stock of the Housing Company allocated to the apartment specified below;

NOW, THEREFORE, in consideration of the mutual promises, covenants, terms, conditions and agreements herein provided, the parties hereto agree as follows:

1st.     The Housing Company hereby leases to the Cooperator and the Cooperator hereby hires from the Housing Company an apartment known as Apartment No. 19B in Building located at 2944 West 5th Street, in Trump Village located at West 5th Street, Neptune Avenue and Sea Breeze Avenue, in the Borough of Brooklyn, County of Kings, City and State of New York, to be occupied by the Cooperator and his family as a private dwelling only, commencing on Sept, 2007, and terminating on December 31, 2099.

2nd.     (a)     The Cooperator covenants and agrees to pay as an annual carrying charge the sum of $_____ payable in advance in equal, monthly installments of $ 613.42 on the first day of each and every calendar month during the term hereof. Said payments shall be deemed to be payments on account of the Cooperator's annual obligations which is hereby defined to be the Cooperator's annual obligations for the Cooperator's proportionate share of the operating costs of the Housing Company. The annual obligation of the Cooperator for each year of the term hereof shall be finally determined by the, Board of Directors of the Housing Company in the light of the year's operating experience. In the event that the revenues of the Housing Company shall exceed its operating costs, the Housing Company will pay or allow rebates to each Cooperator in the amount of his proportionate share of such excess, such rebates to be paid and allowed in such manner or in such form as from time to time the Board of Directors of the Housing Company shall declare and determine. The Housing Company specifically reserves to itself the right, from time to time, to increase the carrying charges per month per rental room in accordance with the provisions of the Business Corporation Law, and the Cooperator hereby consents thereto. Anything herein contained to the contrary notwithstanding, upon any such increase in such carrying charges, the Cooperator hereby covenants that the carrying charges payable by him hereunder shall be increased as of the effective date of such increase by the amount determined by the Board of Directors, and the Cooperator hereby further covenants that he will pay such increased rental so determined by the Board of Directors. As used herein, the term carrying charges includes assessments.

(b)     Proportionate share, as used herein, shall mean that proportion which the carrying charge fixed herein bears to the total carrying charges paid by all Cooperators to the Housing Company.

(c)     The operating cost of the Housing Company as used herein, shall include all expenses and outlays growing out of or connected with the construction, ownership, maintenance, and operation of the lands and buildings owned by the Housing Company which sum may include, among other things. taxes, assessments, water rents, sewer charges, insurance premiums, operating expenses, professional fees, salaries and wages, the cost of improvements, additions, alterations, replacements, repairs, expenses and liabilities under

1

211969-2

or by reason of this or other occupancy agreements, interest on mortgage indebtedness, mortgage amortization payments, the payment of any other liens or charges, the payment of any deficit remaining from a previous period, the creation of a reserve fund as may be required and established by the Board of Directors for depreciation, obsolescence, bad debts or contingent losses or expenses, and expenses for other corporate purposes. The Board of Directors of the Housing Company may include in the operating cost for any year any liabilities or items of expense which accrued or became payable in a previous year and also any sums which it may deem necessary or prudent to provide as a reserve against liabilities or expenses then accrued or thereafter to accrue.

3rd.    The Cooperator hereby agrees as follows:

(a)    To take good care of the demised premises and appurtenances and suffer no waste or injury and to repay to and reimburse the Housing Company the actual cost of all repairs in and about the demised premises as and when the said repairs are needed and made by the Housing Company except repairs to pipes, heating apparatus, partitions, plumbing and drains not occasioned by the misuse or neglect of the Cooperator; the expense of the latter repairs shall be borne by the Housing Company.

(b)    To redecorate and repaint the demised premises at reasonable periods during the term of this agreement and any extensions or renewals thereof, but not less than once every three years, The Housing Company shall not be required to make any repairs in, or to redecorate, the demised premises, except as in this agreement specifically provided.

(c)    To make no alterations, additions or improvements to the demised premises without the written consent of the Housing Company and any such alterations, additions and improvements shall be the property of the Housing Company and shall be surrendered with the demised premises as a part thereof upon the termination of this agreement.

(d)    Not to deface or disfigure any part of the demised premises or the building in which same is situated, and not to do or permit anything to be done, or suffer anything to be done, upon the demised premises in any manner deemed extra hazardous whereby the rate of fire insurance on the building in which the demised premises are located be increased, nor to permit the accumulation of waste or refuse matter.

(e)    To comply with all laws, ordinances and Government regulations and the regulations of the New York of Fire Underwriters applicable to the demised premises.

(f)    To indemnify the Housing Company and save it harmless from any and all liability to person or property arising from injury occasioned wholly or in part by any act or omission of the Cooperator or his family, guests, servants, assigns or sub-tenants.

(g)    At or before the termination of this agreement, to repay the Housing Company the actual cost of repairing any and all injury occasioned by the installation or removal of furniture and property so as to restore the demised premises to their original state.

(h)    At the end of the term hereof, to quit and surrender the demised premises in as good order and condition as they were at the beginning of the term, reasonable wear and use excepted.

(i)    Not to sell, assign, transfer, mortgage or create any charge upon this agreement, nor sublet the demised premises or any part thereof, or use the demised premises or any part thereof, or suffer same

2

211969-2

to be used for any purposes other than as a private dwelling apartment for the Cooperator and his family (as such term is defined by the Housing Company's Board of Directors) without in each instance the prior written consent of the Housing Company, which consent may be withheld by the Housing Company in its sole and absolute discretion. As a condition of any such consent to assignment, the Cooperator shall pay to the Housing Company a Transfer Fee in such amount as may be determined from time to time by the Housing Company's Board of Directors and in accord with the pertinent provisions of the Housing Company's By-Laws, all of which provisions, as the same may be amended from time to time, are incorporated herein and made a part hereof. As a condition of any such consent to a sublet, the Cooperator shall pay to the Housing Company a Subletting Fee in an amount to be determined from time to time by the Housing Company's Board of Directors. The Housing Company may also require the Cooperator, as a condition of any such consent, to reimburse the Housing Company for reasonable administrative, legal and other fees and expenses incurred by the Housing Company in connection with the review and processing of the Cooperator's request to assign this agreement or sublet the demised premises, and to cure all defaults under this agreement. The Cooperator agrees that no boarders or permanent guests shall be permitted without the prior written consent of the Housing Company and the payment of such reasonable fees as the Housing Company may require.

(j)     To permit the Housing Company to erect, use and maintain pipes and conduits in and through the demised premises, and to permit the Housing Company to enter the demised premises to examine the same and to make such decorations, repairs, alterations, improvements, or additions as the Housing Company may deem necessary or desirable and the carrying charges shall in nowise abate while said decorations, repairs, alterations, improvements or additions are being made because of the prosecution of any such work or otherwise,

(k)     If the Cooperator shall not be personally present to open and permit an entry into said premises, at any time when for any reason an entry therein shall be necessary and permissible hereunder, the Housing Company may enter the same by a master key or spare key, or may forcibly enter the same without rendering the Cooperative liable therefor (if during such entry the Housing Company shall accord reasonable care to the Cooperator's property) and without in any manner affecting the obligations of the Housing Company under this agreement.

(l)     Not to require, permit or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the Labor Law or of the rules of the Board of Standards and Appeals, or of any other board or body having or asserting jurisdiction.

(m)     The Cooperator shall be responsible for the repair, maintenance and replacement of the range and refrigerator in his apartment at his own expense in accordance with the methods and procedures adopted by the Board of Directors.

(n)     The Cooperator warrants the accuracy of the statements made in the application and in any report of income made by or in behalf of the Cooperator and any statement of family income, family composition and other eligibility requirements and agrees that such statements shall be deemed substantial and material obligations of his tenancy.

(o)     The Cooperator and the Cooperator's family servants, employees, agents, visitors and licensees shall observe faithfully and comply strictly with the rules and regulations herein set forth, and such other and further reasonable rules and regulations as may be adopted by the Board of Directors of the Housing Company. The Housing Company's written consent which may be required by any of said rules and regulation maybe conditioned upon such terms and conditions, including the payment or payments by the Cooperator of

3

211969-2

such sum or sums as may be set forth In such consent, and such consent shall be conditioned upon the Cooperator's continued compliance with such terms and conditions. The rules and regulations printed hereon and such further rules and regulations as may be adopted by the Board of Directors shall be deemed substantial and material obligations of the Cooperator's tenancy.

(p)    The Cooperator acknowledges that pursuant to the pertinent provisions of the Housing Company's By-laws, all of which provisions, as the same may be amended from time to time, are incorporated herein and made a part hereof, the Housing Company, acting by its Board of Directors, reserves the option to purchase the shares of stock to which this agreement is appurtenant, and the interests of the Cooperator in this agreement, in the manner and upon the terms set forth in said By-law provisions.

4th.    The Housing Company agrees as follows:

(a)    To provide heat at reasonable hours during the cold seasons of the year, hot and cold water in reasonable quantities at all times, elevator service, electricity, gas for cooking purposes, all of which are subject to the provisions of subdivision (b) of paragraph "6th"

(b)    To permit the Cooperator peaceably and quietly to have, hold and enjoy the premises hereby demised for the term aforesaid.

5th.    This agreement is subject and subordinate to all mortgages which may now or hereafter affect the real property of which the demised premises forms a part, and to all renewals, modifications, consolidations, replacements and extensions thereof. The Cooperator shall execute promptly any certificates that the Housing Company may request in confirmation of such subordination, and the Cooperator hereby constitutes and appoints the Housing Company the Cooperator's attorney in fact, to execute any such certificates for and on behalf of the Cooperator.

6th.    The Housing Company and the Cooperator mutually agree as follows:

(a)    The Housing Company shall not be liable for any damage to property entrusted to employees of the Housing Company nor for the loss of any, property by theft or otherwise. The Housing Company shall not be liable for any injury or damage to persons or property resulting from falling plaster, steam, gas, electricity, water, rain or snow, which may leak from any part of said building or from the pipes, appliances or plumbing works of the same, or from the street or sub-surface, or from any other place or by dampness.

(b)    No diminution or abatement of the carrying charges, or other compensation, shall be claimed or allowed for inconvenience or discomfort arising from the making of repairs or improvements to the building or its appliances nor for any space taken to comply with any law, ordinance or order of a governmental authority in respect to the various services herein agreed to be furnished by the Housing Company. It is agreed that there shall be no diminution or abatement of the carrying charges, or any other compensation, for interruption or curtailment of such services if such interruptions or curtailment shall be due to accident, alterations or repairs desirable or necessary to be made or to inability or difficulty in securing supplies or labor for the maintenance of such service, or to some other cause other than the negligence of the Housing Company. No such interruption or curtailment of any such service shall be deemed a constructive eviction. The Housing Company shall not be required to furnish, and the Cooperator shall not be entitled to receive, any of such service during any period when the Cooperator shall be in default in respect to the payment of the carrying charges.

4

211969-2

(c)     The Cooperator shall not expose any sign, advertisement, illumination, aerials, or projection out of the window or upon the exterior of or from said building; or upon it in any place, except such as shall be approved in advance by the Housing Company in writing; and the Cooperator shall use only such shades and/or blinds in the windows of said premises as are approved by the Housing Company in writing.

(d)     If a notice or notices of Mechanic's Lien be filed against the demised premises for labor or material alleged to have been furnished or to be furnished at the demised premises to or for the Cooperator or for someone claiming under him, and if the Cooperator shall fail to cause such lien to be discharged by bond or otherwise within fifteen (15) days after the filing of such notice or notices, the Housing Company may pay the amount of such lien or may discharge it by deposit, bond, or otherwise. In the event the Housing Company shall effect the discharge of such lien or liens, the total expense incurred by the Housing Company in effecting such discharge shall be deemed an additional item to be included In the carrying charges payable by the Cooperator for the demised premises and shall be due and payable by the Cooperator to the Housing Company on the first day of the next following month. The receipt by the Housing Company of any installments of the regularly stipulated carrying charges hereunder or any additional charge shall not be deemed a waiver of any other additional carrying charge or charges then due.

7th.     (a)     If the Cooperator shall default in fulfilling any of the covenants or conditions of this agreement, other than the covenant for the payment of carrying charges, or shall fail or neglect to comply with any clause and any rule or regulation herein stated or hereafter established as herein provided, or if the Housing Company shall in its judgment deem any conduct on the part of the Cooperator objectionable or improper, the Housing Company may give to the Cooperator ten (10) days notice of intention to end the term of this agreement, and thereupon, at the expiration of said ten (10) days (if said default continues to exist), the term hereof shall expire as fully and completely as if that day were the day herein fixed for the expiration of the term and the Cooperator will then quit and surrender the demised premises to the Housing Company but the Cooperator shall remain liable as hereinafter provided.

(b)     If the notice as provided for in subdivision (a) hereof shall have been given and the term shall expire as aforesaid; or if the Cooperator shall make default in the payment of the carrying charges reserved herein, or any part thereof, or in making any other payment herein provided; or if the Cooperator shall sell, encumber, assign or convey or otherwise lose title to all or any part of the stock of the Housing Company which he shall own; or if any execution or attachment shall be issued against the Cooperator; or any of the Cooperator's property upon the demised premises shall be taken or occupied or attempted to be taken or occupied by someone other than the Cooperator, then and in any of such events the Housing Company may, without notice, reenter the demised premises either by force or otherwise, and dispossess the Cooperator and the legal representative of the Cooperator or other occupant of the demised premises by summary proceedings or otherwise, and remove their effects and hold the premises as if this agreement had not been made, and the Cooperator hereby waives the service of notice of intention to reenter or to institute legal proceedings to that end.

(c)     In case of any such default, reentry, expiration and/or dispossess by summary proceedings or otherwise, (a) the carrying charge shall become due thereupon and be paid up to the time of such reentry, dispossess and/or expiration, together with such expenses as the Housing Company may incur for legal expenses, attorneys' fees, brokerage and/or putting the demised premises in good order, or for preparing the same for re-rental; (b) the Housing Company, may relet the premises or any part or parts thereof, either in the name of the Housing Company or otherwise, for a term or terms which may at the Housing Company's option be less than or exceed the period which would otherwise have constituted the balance of the term of this

5

211969-2

agreement, and may grant concessions or free carrying charges; (c) the Cooperator or the legal representatives of the Cooperator shall also pay the Housing Company as liquidated damages for the failure of the Cooperator to observe and perform said Cooperator's covenants herein contained, any deficiency between the carrying charge hereby reserved and/or covenanted to be paid and the net amount, if any, of the carrying charges collected on account of the agreement or agreements covering the demised premises for each month of the period which would otherwise have constituted the balance of the term of this agreement, and may grant concessions or free carrying charges. In computing such liquidated damages, there shall be added to the said deficiency such expense as the Housing Company may incur in connection with reletting. Any such liquidated damages shall be paid in monthly installments by the Cooperator on the carrying charge day specified in this agreement, and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of the Housing Company to the deficiency for any subsequent month by a similar proceeding. The Housing Company at its option may make such alterations and/or decorations in the demised premises as the Housing Company in its sole judgment considers advisable and necessary for the purpose of reletting the demised premises; and the making of such alterations and/or decorations shall not operate or be construed to release the Cooperator from liability hereunder as aforesaid. The Housing Company shall in no event be liable in any way whatsoever for failure to relet the demised premises, or in the event that the demised premises are relet, for failure to collect the carrying charge thereof under such reletting. In the event of a breach or threatened breach by the Cooperator of any of the covenants or provisions hereof, the Housing Company shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if reentry, summary proceedings and other remedies were not herein provided for. Mention in this agreement of any particular remedy shall not preclude the Housing Company from any other remedy in law or in equity. The Cooperator hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of the Cooperator being evicted or dispossessed of the premises.

8th.    If the Housing Company shall be unable to give possession of the demised premises on the date of the commencement of the term hereof by reason of the fact that the premises are located in a building being constructed, and which has not been fully completed to make the premises ready for occupancy, or by reason of the fact that a Certificate of Occupancy has not been procured, or for any other reason, the Housing Company shall not be subject to any liability for the failure to give possession on said date. Under such circumstances, the carrying charges reserved and covenanted to be paid herein shall not commence until the premises are available for occupancy by the Cooperator, and no such failure to give possession on the date of commencement of the term shall in anywise affect the validity of this agreement or the obligations of the Cooperator hereunder, nor shall same be construed in anywise to extend the term of this agreement.

9th.    No act or thing done by the Housing Company or its agents during the term hereby demised shall constitute an eviction by the Housing Company nor shall be deemed an acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by the Housing Company. No employee or agent of the Housing Company shall have any power to accept the keys of said premises prior to the termination of this agreement. The delivery of keys to any employees or agent of the Housing Company shall not operate as a termination of the agreement or a surrender of the premises. The failure of the Housing Company to seek redress for violation of, or to insist upon the strict performance of, any covenant or condition of this agreement or any of the rules and regulations set forth herein or hereafter adopted by the Housing Company shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by the Housing Company of carrying charges with knowledge of the breach of any covenant of this agreement shall not be deemed a waiver of such breach. The failure of the Housing Company to enforce any of the rules or regulations set forth herein, or hereafter adopted, against the Cooperator or against any other cooperator residing in the building shall not be deemed a waiver of any such rules and regulations. No provisions of this agreement shall be deemed to have

6

211969-2

been waived by the Housing Company unless such waiver be in writing signed by the Housing Company. No payment by the Cooperator, or receipt by the Housing Company, of a lesser amount than the carrying charges herein stipulated or such other amounts as may be fixed pursuant to the provisions hereof shall be deemed to be other than on account of the payment of the earliest stipulated carrying charges, nor shall any endorsement or statement on any check nor on any letter accompanying any check or payment of the carrying charges, be deemed an accord and satisfaction and the Housing Company may accept such check or payment without prejudice to its right to recover the balance of such carrying charge or pursue any other remedy in this agreement provided.

10th.   If the demised premises shall be partially damaged by fire or other cause without the fault or neglect of the Cooperator, the Cooperator's servants, employees, agents, visitors or licensees, the damages shall be repaired by and at the expense of the Housing Company and the carrying charge until such repairs are completed shall be apportioned according to the part of the demised premises which is usable by the Cooperator. No penalty shall accrue for reasonable delay which may arise by reason of adjustment of fire insurance on the part of the Housing Company and/or the Cooperator and for reasonable delay on account of "labor troubles", or any other cause beyond the Housing Company's control.  But if the demised premises are totally damaged or are rendered wholly untenantable by fire or other cause, and the Housing Company shall decide not to rebuild the same, or if the building shall be so damaged that the Housing Company shall decide to demolish it or to rebuild it, then or in any of such events the Housing Company may, within ninety (90) days after such fire or other cause, give the Cooperator a notice in writing of such decision, and thereupon the terms of this agreement shall expire by lapse of time upon the third day after such notice is given and the Cooperator shall vacate the demised premises and surrender the same to the Housing Company.

11th.   If the whole or any part of the demised premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then and in that event the term of this agreement shall cease and terminate from the date when the possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. The current carrying charge, however, shall in such case be apportioned.

12th.   The parties hereto hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this agreement, the Cooperator's use or occupancy of said premises; and/or any claim of injury or damage.

13th.   Except as otherwise in this agreement provided, a bill, statement, notice or communication which the Housing Company may desire or be required to give to the Cooperator, including any notice of expiration, shall be deemed sufficiently given or rendered if in writing delivered to the Cooperator personally or sent by certified mail addressed to the Cooperator at the building of which the demised premises are a part, or left at said demised premises addressed to the Cooperator, and the time of the rendition of such bill or statement, and the giving of such notice or communication, shall be deemed to be the time when the same is delivered to the Cooperator, mailed or left at the premises as herein provided. Any notice by the Cooperator to the Housing Company must be served by certified mail return receipt requested or by nationally recognized overnight courier service addressed to the Housing Company at its principal office as set forth at the commencement of this agreement.

14th.   If the Cooperator shall default in the performance of any covenant on the Cooperator's part to be performed by virtue of any provision in any article in this agreement contained, the Housing Company may immediately, or at any time thereafter, without notice, perform the same for the account of the Cooperator. If

7

211969-2

the Housing Company at any time is compelled to pay, or elects to pay, any sum of money or do any act which will require the payment of any sum of money, by reason of the failure of the Cooperator to comply with any provision hereof, or if the Housing Company is compelled to incur any expense including reasonable attorney's fees in instituting, prosecuting and/or defending any action or proceeding instituted by reason of any default of the Cooperator hereunder, the sum or sums so paid by the Housing Company with all interest, costs and damages, shall be deemed to be additional carrying charges hereunder and shall be due from the Cooperator to the Housing Company on the first day of the month following the incurring of such respective expenses.

15th.   The Housing Company may without further notice discontinue the unmetered service of electric current to the demised premises, in which event the carrying charges hereinabove provided for shall be reduced by that portion thereof allocated to the cost of electricity on the books of the Housing Company. In the event such condition occurs, and if electric current be supplied by the Housing Company through a meter, the Cooperator covenants and agrees to purchase the same from the Housing Company or the Housing Company's designated agent at the terms, classification and rates not in excess of those charged to such consumers by the public utilities corporation serving the part of the city where the building is located. Bills therefor shall be rendered at such times as the Housing Company may elect and the amount, as computed from a meter, shall be deemed to be, and be paid, as additional carrying charges.

16th.   The Cooperator unconditionally acknowledges, accepts and agrees that the carrying charges provided for herein are predicated on the following:

(a)    That no washing machine or clothes dryer shall be used in the demised premises and that adequate facilities for such purpose are installed in the basement laundry; and

(b)    That no dogs or other animals shall be harbored or kept on the demised premises; and

(c)    That no window type air conditioner, blower, fan or similar device shall be installed in any window of the demised premises.

The Cooperator further agrees that violation of any of the foregoing provisions shall be deemed to be a violation of a substantial obligation under this lease and that the Housing Company in addition to any other rights it may have under this agreement shall have the right to charge and collect from the Cooperator as additional carrying charge an amount as may be determined and fixed in the sole and exclusive judgment of the Housing Company for each of such violations for each month such violation continues.

17th.   Air conditioners may be installed by the Cooperator only in the air conditioning sleeves provided for same and provided further:

(a)    That no air conditioner will be installed without first securing the written consent of the Housing Company; and

(b)    Upon the execution of an agreement in form satisfactory to the Housing Company, which, among other things shall provide for payment of an annual additional "carrying charge" of        Dollars per annum for each air conditioner so installed, which charge shall be subject to increase or decrease from time to time by the Board of Directors of the Housing Company.

18th.   In the event any monthly installment of carrying charge payable under this Agreement is not paid within ten (10) days of the due date of said payment, a late charge in an amount fixed by the Board of Directors

8

211969-2

of the Housing Company will the charged and be payable by the Cooperator in addition to the amount of the installment of carrying charge for the purpose of defraying the expense incident to handling such delinquent payments.

19th.    (a)    The Cooperator covenants that he will preserve and promote the mutual ownership principles upon which the Housing Company has been founded, abide by the Charter, By-Laws, and Rules and Regulations of the Housing Company and by his acts of cooperation with its other cooperators bring about for himself and the other cooperators a high standard of home and community conditions.

(b)    The provisions of this agreement may be amended at any time by the affirmative vote of at least two-thirds (2/3) of the stockholders of the Housing Company entitled to vote thereon at any annual or special stockholders' meeting, voting in the manner prescribed in the Housing Company's Certificate of Incorporation, provided that (i) the proposed amendment shall be set forth in or annexed to the notice of such meeting and (b) the amendment shall apply uniformly to all such agreements.  Each such duly adopted amendment shall be binding on all the Cooperators even if they did not vote for or agree in writing to the amendment.

20th.    The covenants, conditions and agreements contained in this agreement shall bind and inure to the benefit of the Housing Company and the Cooperator and their respective heirs, distributees, executors, administrators, successors and, except as otherwise provided in this agreement, their assigns.

21st.    This agreement contains the entire agreement between the parties, and any agreement hereafter made shall be ineffective to change, modify or discharge this agreement in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought.

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written.

TRUMP VILLAGE SECTION 4, INC.

By:_____

Name:

Title:

_____
Cooperator-Lessee

_____
Cooperator-Lessee

211969-2

9