# EXHIBIT J

FILED: KINGS CIVIL COURT - L&T 09/29/2025 09:58 AM INDEX NO. LT-311758-23/KI [HO]

NYSCEF DOC. NO. 42                                                          RECEIVED NYSCEF: 09/29/2025

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: HOUSING PART R

_____

TRUMP VILLAGE SECTION 4, INC.                     L&T Index No.: 311758-23

                              Petitioner           Motion Seq Nos. 4-5

        -against-                                  **DECISION/ORDER**

JACON VAYNSHTEYN AS EXECUTOR OF THE
ESTATE OF ANNA VAYNSHTEYN; JACOB VAYNSHTEYN;
JOHN DOE; JANE DOE

                              Respondent.

_____

**ENTERED**

**SEP 2 6 2025**

**CIVIL COURT**
**KINGS COUNTY**

HON. KAREN MAY BACDAYAN

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos. 31, 33, 35-41.

On March 11, 2024, the parties settled this holdover proceeding pursuant to a stipulation of settlement, whereby petitioner was awarded a final judgment of possession with the warrant of eviction to issue forthwith but stayed for respondent to, *inter alia*, pay ongoing maintenance charges by the fifth of each month, beginning April 2024 and continuing until the subject cooperative apartment is sold; list the apartment for sale with a licensed real estate broker and provide petitioner with a copy of the listing agreement by email, and maintain the listing until the apartment is sold; and cease residing in the apartment on or before June 14, 2024 and not permit any other person to reside at the apartment. (NYSCEF Doc No. 20.) On October 28, 2024, counsel for respondent filed its notice of appearance; on that same day, the parties signed a two-attorney stipulation, whereby petitioner's counsel accepted a payment of $1,058.04 from respondent's counsel by an attorney check, curing any default to date, without prejudice to $1.00 owed for October 2024 maintenance, which was to be paid along with November 2024 maintenance by the terms of the March 11, 2024 stipulation, which remains in full force and effect.. (NYSCEF Doc No. 24, notice of appearance; (NYSCEF Doc No. 25, October 28, 2024 stipulation.)

Case 1-26-40732-ess Doc 23-10 Filed 07/31/26 Entered 07/31/26 11:53:01

On December 5, 2024, respondent filed two orders to show cause *pro se*: to punish petitioner for contempt, and to proceed unrepresented in this proceeding. (NYSCEF Doc No. 26, signed order to show cause for contempt [motion sequence 2]; NYSCEF Doc No. 27, signed order to show cause to permit represented party to appear in person [motion sequence 3].) On December 16, 2024, the court issued a decision and order granting respondent's motion to proceed as a self-represented litigant. (NYSCEF Doc No. 28.) That same day, petitioner and respondent entered into a stipulation whereby respondent withdrew its order to show cause seeking contempt "as moot, inasmuch as respondent has been able to schedule online payments using portal." (NYSCEF Doc No. 29.)

Now before the court is respondent's order to show cause seeking to stay execution of the warrant of eviction, and respondent's motion seeking "to challenge plaintiff's counsel due to lack of authority and conflict of interest[.]" (NYSCEF Doc No. 31, signed order to show cause [motion sequence 4]; NYSCEF Doc No. 33, notice of motion [sequence 5].) An e-mail attached to the order to show cause, addressed to respondent by petitioner's counsel, dated July 22, 2025, states respondent defaulted in its obligations under the March 11, 2024 stipulation. "Specifically, you have defaulted by: 1. residing in the subject premises . . . in violation of paragraph 3(c) of the [s]tipulation; and 2. failing to act in good faith with efforts to sell the subject cooperative apartment in violation of paragraph 3(e) of the [s]tipulation." (*Id.* at 8.) The email further states:

> "We are informed that on or around May 19, 2025 you moved into the [p]remises and are presently residing there. Your decision to move into the Premises is believed to be related to your receipt of the attached Ten Day Notice to Quit as Licensee demanding that you vacate the premises known as and located at 3100 Ocean Parkway, Apt. D30, Brooklyn, New [Y]ork by February 6, 2025. Key fob usage report and security cameras show numerous daily entries to the building since May 19, 2025 evidencing your residency at the [p]remises since that time. You have also denied petitioner's requests for inspection of the unit to determine whether you or any other person is residing at the [p]remises. By email dated July 21,[] 2025, you refused to permit inspections as requested by petitioner on July 24 and July 25. Your refusal to permit an inspection further evidences that you are trying to conceal your current residency at the [p]remises.
>
> Your occupancy of the [p]remises is without petitioner's permission and is in violation of paragraph 3(c) [s]tipulation which expressly provides, as a condition of staying execution of the eviction warrant issued in the proceeding, that "on or before June 14,2024, Respondents shall no longer

reside at the [p]remises and shall not permit any other person to reside at the [p]remises."

We are further informed that you have maintained a listing for sale of the Premises at a price that far exceeds the market value of the Premises, evidencing a lack of good faith in your supposed efforts to sell the [p]remises. Copies of the listing agreement showing the listing price of $599,999.00 as of 2024 and a screenshot of the current listing on Zillow at the same price are attached.

Petitioner has solicited the opinions of at least two real estate brokers with knowledge of the market value of the [p]remises. Based on the experience of these real estate brokers, the current market value of the [p]remises is in the range of $375,000.00 - $380,000.00. The broker's letters stating this is the market value are attached. This market value is significantly less than the $599,999.00 price at which the [p]remises is currently listed for sale. We are further informed that there has been little or no interest from prospective buyers despite the premises being listed at this price for more than one year. This lack of interest further evidences a lack of good faith in a genuine effort to sell the [p]remises.

To cure the default, you must within five days hereof, or by July 28, 2025.: 1. vacate the premises and permit an inspection of the premises to confirm that no one is residing at the premises; and 2. reduce the listing price of the [p]remises to a price within the within the range of the market value of the [p]remises as stated above and provide petitioner with an updated listing agreement showing the reduction in price.

…

If you fail to cure the default as indicated above, our client will proceed to execute the eviction warrant as provided in paragraph "7" of the [s]tipulation." (*Id.* at 8-9.)

In support of its order to show cause, respondent affirms he has "not, nor has anyone else, resided in Apartment 19-B since before June 14, 2024, in compliance with the [s]tipulation." (*Id.* at 3.) Respondent argues "[p]etitioner knowingly mischaracterizes ordinary building entry as residency when in reality: [] Fob entries show only building entry, not residence[;] Lobby/elevator cameras don't show entry into the apartment[;] I have friends of 22+ years in the building and I use the complex as a shortcut[;] [and] No floor-level or in-unit cameras exist. Fob logs and lobby cameras are circumstantial evidence at best. They cannot establish residency[.]" (*Id.*)

Case 1-26-40732-ess    Doc 23-10    Filed 07/31/26    Entered 07/31/26 11:53:01

FILED: KINGS CIVIL COURT - L&T 09/29/2025 09:58 AM    INDEX NO. LT-311758-23/KI [HO]
NYSCEF DOC. NO. 42    RECEIVED NYSCEF: 09/29/2025

As to petitioner's allegations that respondent has refused to allow an inspection of the subject premises, respondent affirms that "[o]n July 21, 2025, I responded to the Petitioner's request for inspections by indicating that I was unavailable at the proposed times but was open to arranging a mutually agreeable time." (*Id.*) Attached to the order to show cause is an e-mail exchange between respondent and a "senior assistant manager" for petitioner, dated July 21, 2025, wherein the manager seeks to follow up on an apartment inspection request, and respondent replies that "the estate takes no issue with inspections in accordance with the settlement," that "the estate is not available at those times," that "[a] mutual time must be arranged by the parties," but asking for the justification of the inspection, claiming "[i]nspections cannot be based on the management's recent history of extreme retaliation." (*Id.* at 17.) Respondent further affirms that "also on July 21, 2025, my key fob had been deactivated by management, which prevented me from lawful entry unless another party granted access; security in the lobby directly witnessed this. I emailed the management about the key fob issue and they ignored me. The next day, July 22, 2025, I was emailed a default notice by counsel. Therefore, any claims of non-cooperation are without merit, as I have consistently expressed my willingness to cooperate and facilitate reasonable access to the [p]emises for inspections." (*Id.* at 3-4.)

In response to petitioner's allegations that respondent has not acted in good faith in in its efforts to sell the subject premises, respondent affirms:

> "[T]he Estate listed the [p]remises for sale at a price determined by a licensed real estate broker, in accordance with professional judgment and in furtherance of the Estate's fiduciary duties. Market value is fluid, not fixed, and is a matter of professional judgment. A listing price is an asking price, not a sale price. Petitioner's claim of 'bad faith' ignores that the real estate market allows buyers to negotiate. No term in the [s]tipulation permits [p]etitioner to dictate the sale price. Any attempt by management to influence the Estate's pricing or sale strategy is impermissible interference and constitutes retaliation.
>
> Historically, management has attempted to steer the Estate into using specific preferred brokers and offered discounts, such as $3000 discounted towards closing costs, as incentives to do so. This is a clear conflict-of-interest and is evidenced in the stipulation of settlement, paragraph 7 and paragraphs 7(a)-7(c). The Estate resisted such pressure and retained full discretion to act in accordance with its fiduciary responsibilities. Furthermore, the two real estate brokers, Gary Melamed and Sal Raziano, used in the plaintiff's market valuation argument are the same brokers

referenced in the original stipulation of settlement; this is not a coincidence. Due to their strong ties to management, their opinions and evaluations are biased. Moreover, it does not state in the original stipulation of settlement that their valuations are binding in determining compliance.

This purported 'market value' challenge arose only after the Estate initiated a petition against management on July 17, 2025, clearly evidencing that the timing of the objection is retaliatory rather than substantive. Also, the statement regarding little or no interest from prospective buyers is false. Thus, the Estate has acted in good faith at all times, in full compliance with the Stipulation, and any contrary assertion is without merit." (*Id.* at 4-5.)

Respondent alleges that "after engaging in protected tenant organizing activity within the scope of the estate's shareholder rights on July 17, 2025, the Petitioner engaged in retaliatory conduct, including: [] [d]istributing false and defamatory notices throughout the building labeling me as a vandal and instructing residents to call law enforcement[;] [c]alling next-door neighbor and falsely accusing me of committing vandalism, instructing them to share their surveillance camera footage[;] [d]eploying security personnel to intimidate me and other residents, including placing notices directly on my door. The Estate has a video recording of these events, which is available and may be presented at a hearing for the Court's review[;] [i]nstalling surveillance cameras to intimidate me and monitor my lawful activities[;] [d]enying me access to the Premises through deactivation of my key fob[;] [i]gnoring and dismissing my status as Executor, both in person and through email communications." (*Id.* at 4.) In response, respondent affirms he commenced an HP proceeding for harassment on July 22, 2025, under index number LT-001788-25/KI. (*Id.*)

Petitioner filed written opposition, including an affirmation from petitioner's registered managing agents, who affirms that "based on the submission of two broker's letters who regularly represent buyers and sellers of units in the subjective cooperative apartment building," the apartment's market value is approximately $375,000, but respondent maintains a listing for the apartment at $599,000 for more than 17 months, and the agent does not know of any showings of the apartment or interest expressed from anyone in purchasing the unit due to the current listing price. (NYSCEF Doc No. 36, Oberman affirmation ¶ 5.) Petitioner attaches, *inter alia*, letters from two purported licensed real estate brokers who both state their opinion that the apartment's current fair market value is between $375,000 and $380,000, based on either

Case 1-26-40732-ess    Doc 23-10    Filed 07/31/26    Entered 07/31/26 11:53:01

comparable listings and recent sales or familiarity with the area's market values. (NYSCEF Doc No. 37 at 19-20.) Petitioner's counsel cites to an attached e-mail from respondent's broker, whereby the broker assets that "[d]espite the data presented [by the broker to respondent regarding comparable sales for similar units in the subject apartment complex for the past year], the seller was firm in his decision to list the unit at $599,000[.]" (NYSCEF Doc No. 35 at 5, petitioner's attorney's affirmation in opposition ¶ 19; NYSCEF Doc No. 38, July 22, 2025 e-mail.) Counsel also notes that a probate petition for the deceased shareholder's estate ion Surrogate Court notes the gross estate was worth less than $400,000. (NYSCEF Doc No. 35 at 5, petitioner's attorney's affirmation in opposition ¶ 20; NYSCEF Doc No. 39.) Counsel also notes respondent has not denied receipt of a notice to quit for another residence, as stated in the default notice. (NYSCEF Doc No. 35 at 5, petitioner's attorney's affirmation in opposition ¶ 30.)

Oberman denies that petitioner deactivated respondent's key fob and did not request replacement of the key fob, but that respondent can still gain access to the apartment from the front entrance "for any legitimate reason to administration of the deceased shareholder's estate." (NYSCEF Doc No. 36, Oberman affirmation ¶ 6.) Oberman asserts respondent has been using the key fob of another resident who advised petitioner that she remembers losing a key fob, and that petitioner's software that log key fob entries to the buildings reflects "numerous daily entries by respondent[.]" (*Id.* ¶ 7.) Oberman affirms respondent has not proposed any time for petitioner to inspect the apartment, and that the absence of a denial by respondent of "numerous daily entries to the building since May 19, 2025 as shown on building security cameras and key fob usage report [sic] . . . is further evidence of [sic] that he is residing at the [p]remises, as is [r]espondent's documented refusal to provide access for inspections without further 'justification.'" (*Id.* ¶¶ 11, 13, 15.) As for respondent's motion to disqualify petitioner's attorney, Oberman affirms that its attorney is "acting in accordance with the directives of [p]etitioner's duly elected Board and the officers selected by the Board." (*Id.* ¶ 16.) Oberman affirms that "[p]etitioner's only goal in this proceeding is to enforce the terms of its proprietary lease by prohibiting unauthorized subletting and to effectuate an apartment transfer to a new prospective shareholder whose occupancy of the apartment is permitted by the Board after review of a shareholder application." (*Id.* ¶ 17.)

## ARGUMENT

At argument, petitioner stated that respondent is in default in numerous ways. For example, respondent has not cooperated in good faith with efforts to sell the apartment. Petitioner claims that respondent has listed the apartment through his own broker, Victor Li, in the amount of $599,000. Petitioner states that even that broker, Vitor Li, has stated that the listing is above market, and that the coop is actually worth only $375,000. Two other brokers, two of the three that respondent stipulated to use, have also provided letters from other brokers reflecting same. **Petitioner points to the sworn probate petition for the estate in which respondent values the entire estate as worth less than $400,000.** Respondent previously applied to become a shareholder and was denied by the Board of Directors in their business judgment.

Petitioner further claims that they believe that respondent has re-entered the apartment which respondent flatly denies. Respondent claims there is a sham shareholder government in control, that criminals are in control, that the Board is breaching its fiduciary duty to him, that he is being victimized, and that he is being retaliated against for engaging in protected union activity. Petitioner advances that taking possession of the apartment through execution of the warrant does not divest respondent of his right to sell the apartment, and that petitioner would be willing to work with respondent to allow reasonable access for viewing with an intent to sell.

## DISCUSSION

The issues before the court are narrow: 1) Is respondent in default; 2) has respondent provided good cause for a further stay on execution of the warrant; and 3) should Hertz Cherson be disqualified as attorney.

Petitioner acknowledges that respondent has cured his default in failing to pay maintenance. And respondent correctly claims that he may list his apartment at whatever price he chooses. However, respondent also has duty of good faith and fair dealing under the stipulation. Beginning at 10:24 on the record, respondent at first did not respond cogently to the court's direct question of whether he was willing to sell the subject cooperative apartment. When asked more specifically if he is willing to enter into a contract of sale, respondent was ambivalent. Respondent indicated that he will not contract to sell the apartment for any less than $599,000. The court questions whether this is reasonable.

The court finds that respondent is not in default, YET. Accordingly it is

Case 1-26-40732-ess   Doc 23-10   Filed 07/31/26   Entered 07/31/26 11:53:01

ORDERED that petitioner shall be permitted to inspect the subject apartment for signs of continued occupancy by respondent on Monday, September 29, 2025 between 10 a.m. and 11 a.m. Petitioner, as before, may take photographs and video; and it is further

ORDERED that execution of the warrant is stayed through November 26, 2025 to enable respondent to, in good faith, make reasonable efforts to enter into a contract of sale for the apartment. These efforts which will include, *as per respondent's own words*, discussing the asking price with his broker, speaking with his accountant, and assessing the economic terrain. Respondent shall provide documentary evidence of same, and it is further

**ORDERED prior to November 26, 2025 respondent shall provide evidence to petitioner that he has contracted to sell the apartment, or demonstrate significant progress toward same to petitioner (e.g. application for mortgage by intended buyer, completed, Board package for approval of proposed buyer), as long as maintenance is being paid by 10th of the month. Failure to timely pay maintenance shall be considered a default.**

Should petitioner not accept respondent's evidence of good faith efforts to enter into a contract of sale for the apartment, and serve a marshal's notice of eviction, respondent may seek another order to show cause, and the court will make a determination in its discretion which could include allowing for the execution of the warrant.

Petitioner may serve marshal's notice by mail only upon any default in this stipulation.

Given that respondent's motion to disqualify petitioner's attorney is improperly noticed in violation of the part rules which require motions to be filed by order to show cause, and for the reasons stated in petitioner's opposition, respondent's application to disqualify Hertz Cherson Rosenthal as attorneys for the board is DENIED. (Motion Seq. 5.)

This constitutes the decision and order of the Court.

Date:   September 26, 2025
        Brooklyn, NY

So Ordered:

_____
HON. KAREN MAY BACDAYAN
Judge, Housing Part