# EXHIBIT S

# PUBLIC AUCTION OF
# COOPERATIVE APARTMENT

## Conducted By:

## Mathew D. Mannion, Auctioneer of
## MANNION AUCTIONS, LLC
## 305 Broadway, Suite 200, New York NY 10007

| | |
|---|---|
| Auction Date and Time: | February 17, 2026 at 12:00 p.m. |
| Place of Auction: | Kings County Courthouse Steps – facing Adams Street |
| | 360 Adams Street |
| | Brooklyn, New York, 11201 |

### TERMS OF SALE

| | |
|---|---|
| Collateral being sold: | 20.5 shares of common stock (the "Stock") of Trump Village Section 4, Inc. (the "Cooperative Corporation") and the Proprietary Lease to Apartment 19B located at 2944 West 5th Street, Brooklyn, NY 11224 (the "Unit" or "Apartment"), registered in the name of Anna Vaynshteyn, now the Estate of Anna Vaynshteyn (collectively, "Defaulting Shareholder"). |
| Cooperative Corporation: | Trump Village Section 4, Inc. |
| Attorney representing Cooperative Corporation: | Woods Lonergan PLLC |
| Attorney's Address: | One Grand Central Place 60 East 42nd Street, Suite 1410 New York, NY 10165 |
| Telephone: | (212) 684-2500 |

The shares of stock of the Cooperative Corporation and the Proprietary Lease appurtenant to the apartment describe above will be auctioned off by Mathew D. Mannion, DCA #1434494 and/or John O'Keefe, Licensed Auctioneer, DCA #2103965, (the "Auctioneer") of MANNION AUCTIONS, LLC, upon the following terms and conditions:

1.      Ten (10%) percent of the purchase price of the Stock and Proprietary Lease (the "Downpayment") will be required to be paid by certified or bank check to "Woods Lonergan PLLC as attorneys" at the time and place of sale. Bidders shall be required to present proof of

1

their certified or bank check before being permitted to bid.  No double endorsed checks, personal checks, or cash will be accepted and if the successful bidder fails to immediately tender the Downpayment or otherwise needs to leave the place of auction to satisfy the Downpayment requirement the bid shall be stricken and the Cooperative Corporation may elect to terminate the auction or to open up the bidding again until there is a new successful bidder.

2.    The balance of the purchase price must be paid to the Cooperative Corporation on or before 3:00 p.m. on the 30th day after the date hereof (the "Closing Date") at the office of Woods Lonergan PLLC, One Grand Central Place, 60 East 42nd Street, Suite 1410, New York, NY 10165, or at such other location as designated by the Cooperative Corporation in writing. Except as provided herein, time is of the essence with respect to the Closing Date as to the purchaser only. The balance of the purchase price must be remitted to "Trump Village Section 4, Inc." on the Closing Date and must be paid by certified or bank check drawn upon a member bank of the New York Clearing House. No double endorsed checks, personal checks, or cash will be accepted. No notice will be sent to the purchaser and failure to appear at the place and time specified above to receive the lease and stock certificate is a default under the agreement herein

3.    This is an auction sale of the Shares and all right, title and interest in and to the Proprietary Lease (also known as Occupancy Agreement and hereinafter referred to as "Proprietary Lease") by the Cooperative Corporation, which possesses a security interest in the same as security for unpaid maintenance, assessments, late charges, administrative fees, costs, legal fees and other amounts authorized by the Cooperative Corporation's Governing Documents.  The sale is subject to the terms and provisions of the Offering Plan, Proprietary Lease, By-Laws and House Rules of the Cooperative Corporation (collectively, "Governing Documents").  This auction is also subject to the consent of the Board of Directors of the Cooperative Corporation as to the successful bidder.  It is possible that the Apartment may not be made available by the Cooperative Corporation or other tenants or occupants both before and after the auction. The Bidder shall not be entitled to access or inspect the Apartment prior to closing, and inability to inspect the Apartment shall not be a reason for Bidder's failure to close. No representations or warranties are made regarding the physical status of the Apartment, or economic status of the Cooperative Corporation, whether there are tenants, occupants, or licensees in the Unit, the terms of the cooperative offering plan, or any claims which may exist or may have been made by or against the Defaulting Shareholder.

4.    The Cooperative Corporation may, at its option, grant the purchaser an extension of time to consummate this transaction. Purchaser must request an extension by writing to the Cooperative Corporation at least five (5) days prior to the Closing Date and by obtaining the Cooperative's Corporation's written consent to the extension. The extension shall be granted only on the following terms and conditions: (a) any extension of time herein shall not exceed thirty (30) days; (b) purchaser shall pay interest at the rate of 9% per annum on the total bid price during the period of such extension; (c) purchase shall also pay all fees and assessments incurred from the date of auction through the date of closing; (d) purchaser shall assume all responsibility

2

for any loss or damages from any cause whatsoever from the date of auction through the date of closing; and (e) time shall be of the essence as to the purchaser only.

5.      In the event that the purchase fails to pay the balance of the purchase price within the time period set forth in these terms of sale, or within any preapproved extension of time granted by the Cooperative Corporation, the sale Downpayment will be retained by the Cooperative Corporation without further notice as liquidated damages in that it is impossible to accurately determine the damages incurred by the Cooperative Corporation.

6.      (a) The purchase of the shares of stock of the Cooperative Corporation and the Proprietary Lease appurtenant to the subject apartment are subject to the approval of the Cooperative Corporation and/or the managing agent, as provided in the Proprietary Lease and/or the Corporate By-Laws.

(b)     The Purchaser shall submit a completed application to the board of the Cooperative Corporation, in the form subscribed by the Board, with all required documentation, within five (5) days after the date of the auction sale. The purchaser must cooperate with any and all requirements of the board of the Cooperative Corporation, which requirement may include, but are not limited to, personal or professional references, financial statements, credit search, and personal interviews. If Purchaser fails to submit a completed application within five (5) days of the auction sale date, Purchaser shall be deemed in default of this Agreement, and the Downpayment will be retained by the Cooperative Corporation as liquidated damages.

(c)     If approval or refusal is not obtained by the successful bidder within thirty (30) days of the date hereof or within any pre-approval extension, the Cooperative Corporation may, at its sole option, accept the next highest bid (and thereafter, any further bids made at the auction) or re-notice the sale. In such event, any and all rights of the successful bidder to the Stock and Proprietary Lease shall be deemed terminated and the Downpayment will be retained by the Cooperative Corporation as liquidated damages.

(d)     In the event that the purchaser complies with all of the Terms of Sale but has been rejected by the Cooperative Corporation, then the Downpayment, without interest, will be returned to the purchaser. Thereafter, the Cooperative Corporation may, at its sole option, accept the next highest bid or re-notice the sale. However, if the failure to obtain approval by the Cooperative Corporation is due to a misrepresentation by the purchaser or is due to the purchaser's absence of cooperation in furnishing required information to the Cooperative Corporation, the Downpayment will be forfeited to the Cooperative Corporation.

(e)     In the event that the purchaser complies with all of the Terms of Sale but the Cooperative Corporation has elected to exercise its right of first refusal, if any, then the Downpayment, without interest, will be returned to the purchaser.

7.      If the record owner of the Stock (and lessee under the Proprietary Lease) or subtenant(s), or other person(s) in actual occupancy of the apartment appurtenant to the Stock and Proprietary Lease, fails or refuses to surrender possession and occupancy of the apartment it

3

shall be at the sole risk, cost and expense of the successful bidder to remove and/or evict said occupant(s) or tenant(s) and is not a ground for delay in the completion of the purchase. It is understood that the Cooperative Corporation is not required to deliver the apartment vacant, nor is the Cooperative Corporation required to deliver possession of the Apartment, and that the apartment may be subject the Rent Control Law, Rent Stabilization Law and Code, and/or to the Emergency Tenant Protection Law, and/or any other applicable statutes.

8.     The apartment is sold "AS IS" and further subject to the following: existing violations and orders of any City Department/Agency having jurisdiction thereof; any unpaid maintenance charges and assessments as of the date hereof; the physical condition of said apartment or the building within which said apartment is housed; outstanding utility charges; by-laws, rules, regulations, procedures, resolutions; House Rules; Offering Plan and any amendments thereto of the Cooperative Corporation, and any rights afforded to the Cooperative Corporation thereunder; the Governing Documents; tenants and occupants of the apartment, whether such persons are in possession lawfully or unlawfully; and the Cooperative Corporation's Attorney transfer fee, and/or "FLIP TAX" charged by the managing agent, and/or Cooperative Corporation; and further subject to the Real Property Transfer Tax, if any, imposed by the City of New York, or State of New York, whether or not such tax is the primary responsibility of the transferor, and further subject to any option waiver fee. Purchaser is responsible for paying all such amounts, including the Cooperative Corporation's attorney's fee and all fees due to the Cooperative Corporation's transfer agent. IT IS THE BIDDER'S RESPONSIBILITY TO CONDUCT ALL DUE DILIGENCE INCLUDING TO CONFIRM THE AMOUNT OF ANY CLOSING FEES AND ANY FLIP TAX. ALL SUCH AMOUNTS SHALL BE PAID IN ADDITION TO THE PURCHASE PRICE AND WILL NOT BE DEDUCTED FROM THE PURCHASE PRICE.

9.     If the successful bidder is approved, the successful bidder agrees to assume all obligations of a lessee under the Proprietary Lease and to be bound by the Governing Documents, including but not limited to the By-Laws of the Cooperative Corporation, House Rules; Offering Plan and any amendments, and rules and regulations, if any, from time to time promulgated by the Cooperative Corporation.

10.     This auction is on an "ALL CASH" basis. No assurance is given that financing for the purchase will be available to the successful bidder. The failure of the successful bidder to obtain financing, or approval from the Cooperative Corporation to a pledge of the Shares and Proprietary Lease in connection with any financing, shall not constitute grounds for return of the Downpayment.

11.     Potential bidders should note that the New York City and New York State Real Property Transfer Taxes and the New York State Stock Transfer Tax (collectively referred to as "Taxes") might be imposed in connection with and/or as a condition to the transfer of the Shares. The Successful Bidder shall be required to pay any and all Taxes in connection with this sale. A potential bidder should consult his/her own tax advisor as to the implications of the Taxes.

4

12.    Absolutely no representations or warranties are made as to the legal or physical status of the Proprietary Lease, the apartment, the Cooperative Corporation, the status or legality of the cooperative offering plan, or any claims which may exist or may have been made by or against the borrower or the Cooperative Corporation. All bidders represent to the Cooperative Corporation that their respective bids are without regard to any examination or inspection of the aforesaid apartment, which inspection or examination may or may not have occurred.

13.    No representation or warranty is made regarding any lease which may encumber the Apartment, the rent regulatory status of any occupant or the Apartment or the rent due from any such person, and the Cooperative Corporation shall have no responsibility to produce or assign any such lease, any security deposit under such lease or any other obligation under such lease, sublease or occupancy agreement. The successful bidder shall indemnify and defend the Cooperative Corporation with respect to any security deposit which may have been tendered by any such occupant and shall be responsible to such occupant for the same.

14.    It shall be the sole responsibility and obligation of the successful bidder to make any payment required by the Cooperative Corporation in addition to the purchase price including, without limitation, maintaining arrears, late charges, insurance payments, assessments, transfer taxes, violations, attorneys' fees, costs, closing costs, managing agent fees, flip tax calculated as per the Cooperative Corporation's governing documents and policies, recording fees, filing fees, UCC-1 fees, and the Cooperative Corporation's attorney fees at time of closing. This shall be the sole responsibility of the successful bidder regardless of the amount of any surplus.

15.    In the event of a failure by the Cooperative Corporation to close this transaction, including without limitation, by reason of a judicial determination to set aside the auction sale, Purchaser hereby releases and discharges the Cooperative Corporation from any liability, costs and expenses as a result of the Cooperative Corporation's failure to consummate this transaction. The Cooperative Corporation's sole liability will be to refund the Downpayment, without interest, to the purchaser.

16.    By announcement made at the sale, without further publication or notice, the Auctioneer reserves the right to adjourn, delay or terminate the sale; determine the successful purchaser or to offer the shares to the Cooperative Corporation and the Proprietary Lease appurtenant to the subject apartment for resale. The record of sale maintained by the Auctioneer's bookkeeper will be absolute and final in all disputes.

17.    The purchaser of the shares of stock of the Cooperative Corporation and the Proprietary Lease appurtenant to the subject apartment will, at the time and place of the sale, sign a memorandum of his/her purchase and agrees to comply with these terms.

18.    The Terms of Sale herein are subject to additional or amended terms and conditions, of any, which may be announced at the time of sale.

5

19.    The Cooperative Corporation reserves the right to bid at this sale, shall not be required to post a Downpayment with Auctioneer, and if the Cooperative Corporation is the successful bidder or purchaser by way of an exercise of first refusal rights, the Cooperative Corporation may credit against the purchase price bid all sums due to the Cooperative Corporation under the Cooperative Corporations governing documents, including its By-Laws, Offering Plan, Proprietary Lease, and House Rules. This expressly includes, but is not limited to: flip tax, unpaid maintenance through the Closing Date, unpaid assessments through the Closing Date, unpaid late fees through the Closing Date, unpaid interest through the Closing Date, unpaid fines and/or violations, and any other sums assessed to the Defaulting Shareholder's and/or Unit's account, through the Closing Date, attorneys' fees and costs associated with the Defaulting Shareholders Default, attorneys' fees and costs associated with the preparation and execution of the instant foreclosure sale, and/or closing costs and attorneys' fees. In addition, the aforementioned amounts shall all constitute part of the Cooperative Corporation's lien payable at closing.

20.    The Cooperative Corporation may credit toward the purchase price, in the event it is the successful bidder and/or purchaser, any and all flip tax(es), filing fees, recording fees, ACRIS prep fees, closing fees, stock transfer stamp fees, city and state transfer taxes, lien search fees, managing agent fees, and closing costs and the closing attorneys' fees, as well as all amounts due under the lien.

21.    The successful bidder will pay to the Cooperative Corporation's attorney their reasonable attorneys' fees and costs for preparation of closing documents and attendance of closing. If the closing is held at a location other than the of office of Woods Lonergan PLLC, there will an additional travel fee.

22.    This sale is without recourse to the Auctioneer, the Cooperative Corporation, its attorneys or the Escrow Agent Woods Lonergan PLLC ("Escrow Agent").

23.    In the event of a dispute between the bidders, the Auctioneer reserves the right to determine the successful bidder.

24.    This Agreement is subject to additional or amended terms and conditions, if any, which may be announced prior to or at the time of sale, which are hereby incorporated herein and made a part hereof.

25.    In the event the Cooperative Corporation is the successful bidder and it becomes both the lessor and the lessee under the Proprietary Lease issued to the Apartment, the Cooperative Corporation's interests as lessor are to be preserved and not merged.

26.    In the event that the successful bidder, the Defaulting Shareholder, any other bidder or any other person claiming a right, title or interest in the Shares, the Apartment or this sale, brings suit in any Court or other judicial forum against the Cooperative Corporation, its managing agent, the Escrow Agent and/or the Auctioneer, as a result of this auction/sale of the Shares, the successful bidder agrees that he/she/it will indemnify, defend, and hold harmless the

Cooperative Corporation, its managing agent, the Escrow Agent and/or the Auctioneer against any losses resulting therefrom, including all costs and legal fees, and shall be solely and personally responsible for the expense of legal counsel of the Cooperative Corporation, its managing agent, the Escrow Agent and/or the Auctioneer associated therewith, which sum shall be paid by the successful bidder on demand from the Cooperative Corporation, its managing agent, the Escrow Agent and/or the Auctioneer.

27.     The shares of the Cooperative Corporation being sold or transferred pursuant to the terms herein shall retain their status regardless of the identity of the successful bidder.  In no event shall the successful bidder be deemed a holder of unsold shares or to have any rights associated therewith without the express written consent of the Cooperative Corporation as to the same.

28.     Any notice to be made under these Terms of Sale shall be sent by overnight mail, if to Successful Bidder, at the address indicated on the Memorandum of Sale, and if to the Cooperative Corporation, to its counsel, Woods Lonergan PLLC, One Grand Central Place, 60 East 42nd Street, Suite 1410, New York, NY 10165, unless otherwise notified in writing by either party.

29.     These Terms of Sale are governed by the laws of the State of New York, without regard to conflicts of laws principles. Venue for any dispute shall be proper in the Supreme Court of the State of New York, County of Richmond, or the United States District Court for the Eastern District of New York. If any provision or part of these Terms of Sale is void or unenforceable due to any applicable law, it shall be deemed to be deleted and the remaining provisions of these Terms of Sale shall continue in full force and effect.

30.     The successful bidder represents:

a.     The bid price has been made independently without collusion, consultation, or agreement, for the purpose of restricting competition, as to any matter relating to such bid with any other bidder;

b.     No attempt has been made to induce any other person, partnership or corporation to bid or not to bid for the purpose of restricting competition;

c.     I/We have read and understand the Terms of Sale and agree to be bound by such terms;

## MEMORANDUM OF SALE

The undersigned on this ⌊8 day of February, 2026 agreed to purchase the collateral described in the annexed printed advertisement of sale, for the sum of

_one hundred ninety two thousand and 00/100_

($ _192,000_ ) Dollars and hereby promises and agrees to comply with the terms and conditions of the Terms of Sale of Sale said Stock and Proprietary Lease as above and incorporated herein.

Dated: Brooklyn, New York
    February ⌊8, 2026



_____
Successful Bidder – Signature

_Nethaniel Boyskila_
Successful Bidder – Print Name

_1584 E.21st St, Brooklyn, NY 11210_

_____
Successful Bidder's Address

_718-851-7724_
Successful Bidder's Phone Number

_NB@CGMail.net_
Successful Bidder's E-Mail



_____
By: Cooperative Corporation, Authorized Signatory

8

RECEIVED from ___Nethaniel Bouskila___, Successful Bidder, the sum of ___twenty thousand and 00/100___ ($ 20,000 ) Dollars, being ten (10%) percent of the amount bid by the Successful Bidder sold by me pursuant to the attached Terms of Sale.

Dated: Brooklyn, New York
February 18 , 2026

Received By: _____
Mathew D. Mannion, Auctioneer

9