# EXHIBIT U

# BY-LAWS

## OF

## TRUMP VILLAGE SECTION 4, INC.

**Organized Pursuant to the**
**Business Corporation Law**

## ARTICLE I

## DECLARATION OF PURPOSES

This Corporation (the "Corporation") is organized under and pursuant to the Business Corporation Law of the State of New York.

The object of the Corporation is to construct and operate adequate, safe and sanitary housing accommodations, in accordance with cooperative principles, subject to the provisions and limitations of the Business Corporation Law.

## ARTICLE II

## STOCKHOLDERS MEETINGS

SECTION 1.      Annual Meetings.   The annual meeting of the stockholders of the Corporation, after the first meeting of stockholders, for the election of Directors and for the transaction of other business of the Corporation shall be held at the office of the Corporation in the Borough of Brooklyn, City and State of New York, or at such other place in the City of New York as may be designated in the notice of meeting, at 8:00 P.M. on the first Tuesday of June, if not a legal holiday or religious holiday; and if a legal holiday or religious holiday then, on the next business day following. Written notice, signed by the Secretary or an Assistant Secretary, shall be mailed to each stockholder entitled to vote at such address as appears on the stock book not less than ten nor more than fifty days prior to the date of the meeting; but such notice shall not be required of any meeting at which all stockholders shall be present, or at which all stockholders not present have waived notice in writing.

SECTION 2.      Special Meetings.   Special meetings of the stockholders for any purpose or purposes may be called at any time by the President, and shall be called by the

President or Secretary at the request in writing of a majority of the Board of Directors or at the request in writing of twenty-five (25%) percent of the stockholders who shall require the Secretary or other officer of the Corporation to give notice of such meetings. Written notice of such meeting, setting forth the time and place of the holding of such meeting and the object thereof, shall be mailed to each stockholder entitled to vote at such address as appears on the stock not less than ten nor more than fifty days prior to the date of the meeting, but such notice shall not be required of any meeting at which all stockholders shall be present, or at which all stockholders not present have waived notice in writing. No business other than that stated in the notice shall be transacted at any special meeting unless where stockholders of record of all outstanding stock of the Corporation are present thereat in person or by proxy.

SECTION 3.    Quorum.  Present in person or by proxy of a one third of the holders of the outstanding stock entitled to vote shall be necessary to constitute a quorum, but a lesser number may adjourn from time to time without notice other than an announcement at the meeting in which the requisite number of stockholders shall not be present.

SECTION 4.    Voting.  At all meetings of the stockholders, all questions the manner of deciding which is not specifically regulated by statute or by these By-Laws shall be determined by a vote of the majority of the votes cast by the holders of shares entitled to vote at the meeting. Each stockholder shall be entitled to one vote for any and all purposes regardless of the number of shares held by such holder. For this purpose, all joint or common holders of the same shares shall be deemed to be one stockholder.  All voting, other than for directors, shall be viva voce except as otherwise prescribed by statute or these By-Laws.

SECTION 5.    Order of Business.  At all meetings of the stockholders the following order of business shall be observed as far as consistent with the purpose of the meeting:

1.    Calling or certification of persons entitled to vote.

2.    Presentation of Notice of the Meeting and proof of service, or waiver of notice.

3.    Reading of minutes of preceding stockholders meeting.

2

Imanage_211877_1

4.    Reports, respectively of President, Treasurer and Secretary.

5.    Reports of committees, if any.

6.    Appointment of inspectors of election.

7.    Any unfinished business.

8.    Transaction of such other business as may properly come before the meeting.

9.    Election of directors for ensuing year.

## ARTICLE III

## BOARD OF DIRECTORS

SECTION 1.    The number of Directors shall be thirteen. Directors must be stockholders in good standing and residing or domiciled in the buildings of the Corporation. Stockholder in good standing is defined as a person who is not habitually indebted to the Corporation and who is not in violation of the By-Laws or Rules and Regulations of the Housing Company. At the first annual meeting, the three classes of Directors shall be elected for terms respectively of one, two and three years. At each subsequent annual meeting of stockholders, Directors shall be elected for terms of three years to replace the Directors whose terms are expiring in that year. Each Director shall serve as such Director until his or her successor has been elected and has qualified.

SECTION 2.    Nomination Procedures for Candidates for the Board of Directors. No candidate for election to the Board of Directors by the stockholders shall be nominated except by petition subscribed to by not less than fifty stockholders residing in the Corporation's premises representing no less than fifty apartments.

A.    Said petition shall be filed with the Secretary of the Corporation or his or her authorized agent, not less than sixty nor more than ninety days before the stockholders meeting for the election of members of the Board of Directors.

3

B.     The top of each sheet of said petition shall substantially state that the undersigned petitioner is a stockholder of Trump Village Section 4, Inc., is entitled to vote at the next meeting of stockholders, has truly set forth his or her resident address opposite his or her signature and does nominate the within named candidate for election to the Board of Directors at the next meeting of stockholders. The bottom of each sheet of the petition shall contain an affirmation subscribed by a witness, substantially to the effect that the affiant is a stockholder of the Corporation, resides in Trump Village Section 4, Inc. listing his or her address, and that said affiant knows each of the stockholders whose names are subscribed to said petition and that each of them, in the presence of the affiant, signed his or her name to the petition and stated that the foregoing statement made and subscribed by the petitioner was true.

C.     No candidate shall have his name submitted to the stockholders for election to the Board of Directors who has not submitted to the Secretary of the Corporation, or his or her authorized agent, a written acceptance of the nomination at least fifteen days prior to the date set for election.

D.     Campaigning:  A period of not less than one month shall elapse between the time nominations are closed and the time of election. During this period candidates may campaign under the following terms and conditions:

1.     No campaign material may be affixed in any form to the property of the Corporation.

2.     It is prohibited for candidates or other persons on a candidate's behalf to distribute any campaign material. Each candidate may submit not more than a 250 word statement of his or her qualifications together with a photograph to the Election Committee which shall distribute copies of the statements and photographs of all candidates to each apartment.

3.     Face-to-face, door-to-door campaigning is permissible.

4.     Any violation of these election procedures will cause the violating candidate to be immediately disqualified and removed from the ballot by the Election Committee.

4

SECTION 3.    Vacancies.  Vacancies occurring in the Board for any reason may be filled by vote of the Board, unless the number of Directors then in office is less than a quorum. A Director elected by the Board to fill a vacancy shall hold office until the next meeting of shareholders at which election of Director is in the regular order of business, and until his or her successor has been elected and qualified.  If the remaining Directors are not sufficient to constitute a quorum, a regular or special meeting of shareholders shall be called and such number of Directors shall be elected may be necessary to constitute the full membership of the Board.  A Director elected by the shareholders to fill a vacancy shall hold office for the unexpired term of his predecessor.

SECTION 4.    Removal of Directors.  At any regular or special meeting of the Board of Directors or shareholders duly called for such purpose, any one or more of the Directors may be removed for cause by a vote of two-thirds of the entire Board of Directors or of the shareholders entitled to vote.  The term "cause" shall include, but not be limited to, the absence by any Director from four duly noticed Board meetings during any twelve-month period or from three consecutive duly noticed Board meetings during any period.

SECTION 5.    Compensation.  No compensation shall be paid to Directors for their services as Directors. No remuneration shall be paid to a Director for services performed by him or her for the Corporation in any other capacity, unless a resolution authorizing such remuneration shall have been unanimously adopted by the entire Board of Directors other than the vote of the interested Director, before the services are undertaken.  A Director may not be an employee of the Corporation.

SECTION 6.    Meetings.  Meetings of the Board of Directors may be held at such time and place as shall be determined, from time to time, by a majority of the Directors but at least two regular meetings shall be held during each fiscal year. Notice of meetings of the Board of Directors shall be given to each Director, personally or by mail, telephone or telegraph, at least three days prior to the day named for such meeting.

SECTION 7.    Waiver of Notice.  Before or at any meeting of the Board of Directors, any Director may, in writing, waive notice of such meeting and such waiver shall be deemed equivalent to the giving of such notice. Attendance by a Director at any meeting of the Board

5

Imanage_211877_1

shall be a waiver of notice by him or her of the time and place thereof. If all the Directors are present at any meeting of the Board, no notice shall be required and any business may be transacted at such meeting.

SECTION 8.    Quorum.  At all meetings of the Board of Directors, a majority of the Directors shall constitute a quorum for the transaction of business, and the acts of the majority of the Directors present at a meeting at which a quorum is present shall be the acts of the Board of Directors. If, at any meeting of the Board of Directors, there be less than a quorum present, the majority of those present may adjourn the meeting from time to time. At any such adjourned meeting, any business which might have been transacted at the meeting as originally called may be transacted without further notice.

SECTION 9.    Fidelity Bonds.  The Board of Directors shall require that all officers and employees of the Corporation handling or responsible for corporate or trust funds shall furnish adequate fidelity bonds.  The premiums on such bonds shall be paid by the Corporation.

SECTION 10.    Committees.  The Board of Directors may, from time to time, appoint, from its own members or other stockholders, Committees with such powers and duties as it shall determine, except that Committees not limited to members of the Board of Directors, shall have power only to investigate and report to the Board of Directors.

SECTION 11.    Powers and Duties.  The Board of Directors shall have the powers and duties necessary for the management of the business of the Corporation and may do all such acts and things as are not by law or by these By-Laws directed to be exercised and done by the stockholders, subject to the provisions and limitations contained in the Business Corporation Law.

## ARTICLE IV

## OFFICERS

SECTION 1.    Election.  The Board of Directors at its first meeting after the election of directors in each year shall elect from its number a President and shall also elect a Vice-President, a Secretary and Treasurer. It may elect an Assistant Secretary and an Assistant

6

Imanage_211877_1

Treasurer, and such other officers as in its discretion the needs of the Corporation may from time to time require.

SECTION 2.    Term of Office.  All officers of the Corporation shall be elected to hold their respective offices during the pleasure of the Board of Directors, and any vacancy occurring in the office of the President, Vice President, Treasurer or Secretary or any other office shall be filled by the Board of Directors.

SECTION 3.    President.  The President shall preside at all meetings of the Board of Directors, and shall act as chairman at and call to order, all meetings of the stockholders. Subject to the supervision and direction of the Board of Directors, the President shall have the general management of the affairs of the Corporation and perform all the duties incidental to his or her office.

SECTION 4.    Vice-President.  The Vice-President, shall, in the absence, disability or incapacity of the President, have the power and perform the duties of the President, and those which the Board of Directors may assign to him or her from time to time.

SECTION 5.    Secretary.  The Secretary shall keep the minutes of the meetings of the directors and stock-holders; shall attend to the serving of notice of the meetings of the directors and stockholders; shall affix the seal of the Corporation to such certificates, documents and papers as may require it, except that from time to time the Board of Directors may direct such seal to be affixed by any other officer or officers; shall have charge of the stock certificate book and of such other books and papers as the Board of Directors may direct; shall attend to such correspondence as may be assigned to him or her, and shall perform all the other duties incidental to his or her office and those which the Board of Directors may from time to time designate.

SECTION 6.    Treasurer.  The Treasurer shall be the chief financial officer of the Corporation and shall have the care and custody of all the funds and securities of the Corporation and shall deposit the same in the name of the Corporation in such bank or banks as the Directors may designate. He or she may be required by the Board of Directors to give such bonds as it shall determine for the faithful performance of his or her duties.

7

Imanage_211877_1

SECTION 7.    <u>Assistant Secretary and Assistant Treasurer</u>.  The Assistant Secretary and Assistant Treasurer, shall, respectively, in the absence, disability or incapacity of the officer to whom he or she is an assistant, have the powers and perform the duties of such officer, and shall perform such other duties as may be assigned to them from time to time by the Board of Directors. They may be required by the Board of Directors to give such bonds as it shall determine, for the faithful performance of their duties.

SECTION 8.    <u>Other Officers</u>.  Other officers shall perform such duties and have such powers as may be assigned to them from time to time by the Board of Directors.

SECTION 9.    The Treasurer may at the same time hold the office of Secretary or Assistant Secretary but no other office in the Corporation.

## ARTICLE V

### OPERATION OF THE PROTECT AS A COOPERATIVE

Subject to the provisions of statute, the Corporation will operate the premises which it has developed and owns in the Borough of Brooklyn, City and State of New York, as a cooperative and, in accordance therewith, shall pay, or allow, as and when determined by the Board of Directors, after the payment of obligations, expenses, taxes and assessments, and the establishment of suitable reserves, a rebate or rebates of rent or carrying charges to each tenant cooperator in proportion to the rental or carrying charges made by him or her during the period in respect of which such rent rebate or carrying charge or rebates are allowed or paid. The monthly rentals or carrying charges paid by the tenant cooperators shall be deemed to be payment on account of their annual rental obligation, which shall be finally determined by the Board of Directors in the light of each year's operating experience.

## ARTICLE VI

### SIGNATURE OF INSTRUMENTS

Checks, notes, drafts and orders for the payment of money and obligations of the Corporation and all contracts, mortgages, deeds and other instruments, except as otherwise in

8

these By-Laws provided, shall be signed and executed on behalf of the Corporation by any two of the four officers (the President, Vice-President, Secretary or Treasurer).

## ARTICLE VII

## CAPITAL STOCK

SECTION 1.    Certificates.    Certificates of stock shall be numbered and issued in consecutive order, shall be signed by the President or the Vice-President and by the Secretary or an Assistant Secretary or the Treasurer or an Assistant Treasurer, and sealed with the seal of the Corporation; and in appropriate books of record shall be entered the name of the person owning the shares represented by each certificate, the number of shares and the date of issue. All certificates exchanged and returned to the Corporation shall be marked "Cancelled", with the date of cancellation by the President, a Vice-President, the Secretary or the Treasurer and shall be filed among the corporate records of the Corporation. The certificates of stock of the Corporation shall bear the following legend:

"The rights of any holder hereof are subject to the provisions of the By-Laws of the Corporation as amended from time to time, and to all the terms, covenants, conditions, and provisions of a certain Occupancy Agreement or Proprietary Lease made between the person (s) in whose name(s) this certificate is issued and the Corporation for an apartment in the premises owned by the Corporation, in Brooklyn, New York, which By-Laws and Occupancy Agreement or Proprietary Lease limit and restrict the title and rights of any transferee hereof. The shares represented by this certificate are transferable only as an entirety and only to an assignee of the Occupancy Agreement or Proprietary Lease approved by the Board of Directors of the Corporation. Copies of the By-Laws of the Corporation and of the Occupancy Agreement or Proprietary Lease are on file and available for inspection at the offices of the Corporation.

"In the event that any stockholder shall elect to sell, transfer, or assign his or her shares of stock in the Corporation, said stockholder shall comply with the requirements of the Occupancy Agreement or Proprietary Lease and the By-Laws as amended from time to time. The Corporation, by the terms of said By-Laws and Occupancy Agreement or Proprietary Lease, has at all times a first lien on the shares represented by this certificate, for all sums due and to become due to the Corporation from the owner or joint owners of said certificate under said By-Laws and said Occupancy Agreement

9

or Proprietary Lease, or otherwise. The Board of Directors of the Corporation may refuse to consent to the transfer of the shares represented by this certificate until any indebtedness or obligations of the stockholder or joint stockholders to the Corporation, arising under the provisions of said By-Laws and Occupancy Agreement or Proprietary Lease, or otherwise arising, are paid in full."

SECTION 2.    Transfers. Shares represented by any certificate shall be transferable only as an entirety on the books of the Corporation by the holder in person or by attorney, upon surrender of the certificate for such shares, and only in compliance with the following:

A.    Transfer or Shares. (a) Transfer of shares of stock of the Corporation shall not be valid unless the Corporation consents thereto in writing, which consent may be withheld for any reason whatsoever to the fullest extent permitted by law.

(b)    Transfers of shares of stock of the Corporation shall be made only on the books of the Corporation on surrender of the certificate for such shares.

(c)    Transfers of shares of stock of the Corporation shall be made only to the holder of, or to an assignee or distributee of, the Occupancy Agreement or Proprietary Lease accompanying said shares, and provided that the transfer, assignment, or distribution to such leaseholder, assignee, or distributee shall fully comply with the restrictions and conditions contained in these By-Laws and in the Occupancy Agreement or Proprietary Lease with respect to assumption, transfer, or assignment thereof.

(d)    In the event that any stock certificate is lost, stolen, destroyed, or mutilated, the Board of Directors may authorize the issuance of a replacement certificate. Before issuance of such replacement certificate, the Board may require the owner of the lost, stolen, destroyed, or mutilated certificate, or the legal representative of such owner, to make an affidavit or affirmation setting forth such facts as to the loss, theft, destruction, or mutilation as the Board deems necessary, and may require said owner or legal representative of such owner to give the Corporation a bond in such reasonable sum as the Board directs, and to execute an agreement holding the Corporation harmless for the issuance of said replacement certificate.

10

(e)      The Board of Directors shall have the authority to fix by resolution and to collect, before any transfer or assignment of shares and an Occupancy Agreement or Proprietary Lease (in fee or as collateral for a loan) takes effect as against the Corporation as Lessor, reasonable fees to cover the Corporation's expenses and attorneys' fees in connection with such proposed transfer or assignment (which fees are in addition to and not in place of the transfer fee).

(f)      Anything herein contained to the contrary notwithstanding, no shares in this Corporation shall at any time be sold, assigned, alienated or transferred in any respect whatsoever by any stockholder of the Corporation unless the stockholder at the same time transfers as a unit all shares owned or held by the stockholder at that time allocated to the apartment being sold, assigned, alienated or transferred.

B.      <u>Transfer Fees</u>.  (a)  Pursuant to the authority conferred by the Occupancy Agreement or Proprietary Lease, every sale or, to the extent provided herein, other transfer of shares of stock in the Corporation shall be subject to payment by the seller to the Corporation of a transfer fee determined as set forth below.  Full payment of the transfer fee shall be a pre-condition to the Corporation's obligation to permit and effectuate the transfer of any shares that are sold.

(b)      For the first sale or, to the extent provided herein other transfer of any apartment after reconstitution, the transfer fee shall be 20% of the gross sales price and for the second sale of any apartment after reconstitution and all subsequent sales of the apartment, the transfer fee shall be 5% of the gross sales price regardless of when the sale occurs.

(c)      Bequests by stockholders and bona fide gifts by stockholders to members of their immediate family are exempt from the transfer fee, but, if the apartment bequeathed or given had not been previously sold after reconstitution, the first sale of the apartment by the stockholder(s) who receive the bequest or gift shall be deemed to be the first sale of the apartment after reconstitution for the purpose of calculating the transfer fee due on such sale.  Immediate family for this purpose shall consist of the stockholder's spouse (which term includes any person entitled by law to be treated as a spouse), children, grandchildren,

11

parents, grandparents, brothers and sisters. After one gift, the next transfer shall in any event be subject to the transfer fee.

C.    The Corporation's Right of First Refusal.    (a) No shares of stock of the Corporation shall at any time be sold, assigned, alienated or transferred in any respect whatsoever (excluding bequests and bona fide gifts) by any stockholder to any person or corporation so long as the Corporation is willing to purchase such shares of stock at the price for which the stockholder proposes to sell the shares.

(b)    The contract between the seller(s) and purchaser(s) shall provide that it is subject to the Board of Directors' approval and to the Corporation's right of first refusal to purchase such shares. In order to ascertain whether the Corporation is willing to purchase any shares, the seller(s) and purchaser(s) shall execute the Notice That A Contract Has Been Entered Into on the form prescribed by the Corporation. Said Notice shall be submitted to the Corporation with the parties' application for the Corporation's approval of the transfer but the effective date of the Notice shall be deemed to be the date on which the Corporation issues to the parties its written notice that the application package is complete and that all required credit checks, background checks and home inspections have been completed.

(c)    If the Corporation, within a period of thirty (30) days after the effective date of the Notice that a Contract Has Been Entered Into, indicates its willingness to purchase said shares and shall give notice thereof in writing to the seller(s) and purchaser(s), the parties' contract of sale shall be deemed cancelled and the seller(s) shall be bound, within thirty (30) days thereafter, to transfer such shares to this Corporation upon receipt by the seller(s) of the price set forth in the contract less the applicable transfer fee.

(d)    Upon expiration of the said thirty (30) days, or sooner if approved by the Board, if the parties are not notified of the willingness of the Corporation to purchase the seller(s)' shares, the seller(s) shall, subject to the approval of the Board of Directors, have the right to sell said shares to the purchaser(s) for a price not exceeding the price set forth in the contract, but such shares shall not be transferred on the books of the Corporation to the purchaser(s) unless the seller(s) shall first pay to the Corporation the fees and charges set forth in these By-Laws, including the transfer fee.

12

D.    Subletting.    Pursuant to the authority conferred by the Occupancy Agreement or Proprietary Lease, the Corporation has adopted the following subletting policies:

(a)    All sublet arrangements are subject to prior written approval of the Board of Directors including review and approval by the Board of the proposed sublessee and all other proposed occupants of the apartment, which approval may be withheld for any reason to the fullest extent permitted by law.    The stockholder and the sublessee shall, as a condition of any such approval, execute such documents and agreements as the Corporation shall require.

(b)    Sublets for less than six months are not permitted. Sublets may be permitted for up to one year, and may be renewed for a second year and a third year with Board approval for each renewal, provided there have been no violations of the Occupancy Agreement or Proprietary Lease by the stockholder or by the subtenant.

(c)    No stockholder will be permitted to sublet for more than three years (consecutive or non-consecutive) in any five year period, with at least a two year period of no subletting between each five year period.

(d)    A sublet fee will be charged to the stockholder.    Such sublet fee will be equal to 25% of the maintenance payable by the stockholder to the Corporation. The fee will be billed monthly as additional maintenance.

(e)    The stockholder will remain responsible to the Corporation for all payments due to the Corporation and for any and all violations of the Occupancy Agreement or Proprietary Lease, House Rules and By-Laws and any and all violations of law by any occupant of or visitor to the apartment.

(f)    No sublet that has been commenced without first obtaining the prior written approval of the Board of Directors will be approved after the fact. Any stockholder who has entered into a sublet without first obtaining the prior written approval of the Board of Directors will have to pay an amount equal to double the sublet fees for the

13

period of the unauthorized sublet and will not be permitted to sublet until the expiration of one year after the unauthorized sublet has terminated.

E.    Fees. (a) The Board of Directors shall have the authority to fix by resolution and to collect, before any assignment of an Occupancy Agreement or Proprietary Lease, or any reallocation of shares, takes effect as against the Corporation, reasonable fees to cover the Corporation's expenses and attorneys' fees and disbursements in connection with such proposed assignment or reallocation, or both, as the case may be.

(b)    Transfer Fees. The Board of Directors shall have the authority to fix and collect, before permitting the transfer by sale, gift, intestacy or devise of any shares, transfer fees in connection with such proposed transfers. Transfer fees shall be paid by the stockholder at the time of transferring the shares and the Occupancy Agreement or Proprietary Lease.

(c)    Subletting Fees. The Corporation may condition its consent to the subletting of any apartment, upon the payment by the stockholder of subletting fees to the Corporation in an amount to be determined from time to time by the Board of Directors.

(d)    Loan Processing Fees. The Board of Directors shall have the authority to fix and collect, before permitting the pledging of shares and the assignment of the Occupancy Agreement or Proprietary Lease as security for a loan, fees to be paid to the Corporation for processing recognition agreements for loans, reviewing related documents for approval, attending the closing of the loan transaction, and for the Corporation's attorneys' fees and disbursements relating to the transaction.

SECTION 3.    Holder of Shares. The Corporation shall be entitled to treat the holder of record of any share or shares of capital stock of the Corporation as the holder in fact thereof, and shall not be bound to recognize any equitable or other claim to or interest in such share on the part of any other person whether or not it shall have express or other notice thereof, except as expressly provided by the laws of the State of New York and in these By-Laws.

Imanage_211877_1

SECTION 4.    Lien. The Corporation shall have a lien upon the shares of stock of any stockholder and upon all monies due and owing to the Corporation by any stockholder for any and all debts owed to the Corporation by such stockholder. The Board of Directors may refuse to approve a transfer of any shares upon which the Corporation has such a lien.

SECTION 5.    Definition. As used in the Article, the words, "stock", "shares of stock" and "certificates of stock" shall include any interest in the Corporation and the words "stockholder" shall include the owner or holder of any such interest.

## ARTICLE VIII

## SUBSTITUTE SCRIE PROGRAM

SECTION 1. Eligibility. Any stockholder or co-stockholder of record as of the date that this Corporation ceased being a Mitchell-Lama Company, who was receiving benefits under the New York City Senior Citizens Rent Increase Exemption Program ("SCRIE Program") immediately prior to said date, or who meets all the criteria for such benefits within six months after that date, shall be eligible to receive benefits under the Substitute SCRIE Program of the Corporation provided for in this Article for so long (i) the SCRIE program continues and (ii) such stockholder or co-stockholder meets all of the eligibility standards for the SCRIE program that would have been applicable if the Corporation had remained a Mitchell-Lama Company.

SECTION 2. Benefits. The Corporation shall advance, as credit against the value of the stockholder's or co-stockholder's shares of stock, whatever portion of the maintenance payments due from a stockholder or co-stockholder, eligible to participate under Section 1 of this Article, which is equal to the benefits that said stockholder or co-stockholder would have received under the SCRIE Program as a lessee or lessees from a corporation organized and existing under the Limited-Profit Housing Companies Law of the State of New York.

SECTION 3. Advances to be Repaid with Interest Upon Sale of Shares. Upon the sale or transfer of the participating stockholder's and/or co-stockholder's shares of stock, all sums so advanced to the stockholder or co-stockholder under the Substitute SCRIE Program shall be repaid to the Corporation, with interest at such rate as shall, from time to time, be determined by the Board of Directors, provided that such interest rate shall not exceed the maximum rate permitted by law.

15

SECTION 4.   Security for Repayment of Advances, and Corporation's First Lien on Shares. All stockholders or co-stockholders participating in the Substitute SCRIE Program shall execute an agreement with the Corporation, in such form as the Corporation shall require, setting forth the obligations of the stockholders or co-stockholders and the Corporation.   The Corporation may file a UCC-1 Financing Statement in accordance with the provisions of the Uniform Commercial Code of the State of New York, or its equivalent, to perfect its security interests under this Article.   Any other loan obtained by a stockholder or co-stockholder participating in the Substitute SCRIE Program, which shall use the shares of stock of the Corporation as collateral, shall be subject and subordinate to all sums advanced to the participating stockholder or co-stockholder under this Substitute SCRIE Program.

## ARTICLE IX

## AMENDMENTS

These By-Laws may be amended, repealed or altered, in whole or in part, by vote of a majority of the stockholders of the Corporation cast at any duly called annual or special meeting of the stockholders, provided the proposed amendment is set forth in the notice of the meeting. The Board of Directors shall not alter or repeal any By-Laws adopted by the stockholders of the Corporation after the date of filing with the Secretary of State, the Certificate of Amendment to the Corporation's Certificate of Incorporation pursuant to which this Corporation ceases to be a Limited-Profit Housing Company, but may adopt additional By-Laws, in harmony therewith, which may be amended or altered by the stockholders at the next annual meeting or at a special meeting of the stockholders called for this purpose.

## ARTICLE X

## SEAL

The seal of the Corporation shall be circular in form and bear the name of the Corporation, the words "Corporate Seal", the year of incorporation and the words "New York".

Imanage_211877_1

ADMINISTRATIVE OFFICE
(718) 946-4800

FAX
(718) 996-4759

# Trump Village West

### 2928 WEST 5TH STREET • BROOKLYN, N.Y. 11224

Dear Shareholder:

Below is a copy of the newly adopted by-law changes that were voted on and passed during our June 2009 election.  Please attach this page to the set of by-laws you received after privatization.

Thank you for your cooperation.

Trump Village Board of Directors

1- **Amendment of Bylaws Article VII Section 2.B.(c) to read, "Bequests by stockholders and bona fide gifts by stockholders to members of their immediate family are exempt from the transfer fee, but, if the apartment bequeathed or given had not been previously sold after reconstitution, the first sale of the apartment by the stockholder(s) who receive the bequest or gift shall be deemed to be the first sale of the apartment after reconstitution for the purpose of calculating the transfer fee due on such sale.  Immediate family for this purpose shall consist of the stockholder's spouse (which term includes any person entitled by law to be treated as a spouse), children, parents, brothers and sisters.  After one gift, the next transfer shall in any event be subject to the transfer fee."  The proposed amendment removes grandchildren and grandparents.**

2- **Amendment of Bylaws Article VII Section 2.D.(f) to read, "No sublet that has been commenced without first obtaining the prior written approval of the Board of Directors will be approved after the fact.  Any stockholder who has entered into a sublet without first obtaining the prior written approval of the Board of Directors will pay in addition to the sublet fees, a fine in the amount of $2,500.0 per month until the illegal subtenant vacates the premises and the Cooperator/Tenants will forfeit their parking space beginning one month after receipt of notice to have the illegal subtenant vacated from the apartment.  The Cooperator/Tenants will not be permitted to apply to the Board of Directors for permission to sublet until the one year after the illegal sublease term has ended."  The proposed amendment increases the penalty from paying an amount equal to double the sublet fees for the period of the unauthorized sublet.**

## By-Laws Amendment No. 1:

RESOLVED that Section 1 of Article III of the By-Laws of Trump Village Section 4, Inc. is amended to read as follows; new text is underlined and deleted text is in [brackets]:

SECTION 1.Number, Term of Office and Qualifications. The number of Directors shall be thirteen. [Directors must be stockholders in good standing and residing or domiciled in the buildings of the Corporation.] In order for a person to qualify to serve as a Director, the person must (a) at the time of election be a stockholder in good standing of the Corporation, (b) have resided as a tenant-stockholder of the Corporation in his/her apartment, pursuant to his/her occupancy agreement with the Corporation, for at least two-hundred days each year during the two years immediately preceding the date of the annual meeting or such other date of such person's election as a Director, (c) have completed the Board sponsored Governance Class, and (d) sign and submit to the Secretary of the Corporation prior to the annual meeting or such other date of such person's election as a Director an Affidavit of Good Standing in the form attached as Exhibit "A" to these By-laws. "Stockholder in good standing" is defined as a person who, [has not been habitually indebted to the Corporation] as of the date of the annual meeting or such other date of such person's election as a Director, (a) is not in arrears in an amount equivalent to two or more months of his or her base maintenance charges as shown on the books and records of the Corporation, and (b) is not in violation of the By-Laws [or Rules and Regulations of the Housing Company] of such persons Occupancy Agreement for such person's apartment, or of the rules and regulations of the Corporation. At the first annual meeting, the three classes of Directors shall be elected for terms respectively of one, two and three years. At each subsequent annual meeting of stockholders, Directors shall be elected for terms of three years to replace the Directors whose terms are expiring in that year. Each Director shall serve as such Director until his or her successor has been elected and has qualified.

## By-Laws Amendment No. 2:

RESOLVED that Section 2 of Article IV of the By-Laws of Trump Village Section 4, Inc. is deleted in its entirety and replaced with the following new Section 2:

SECTION 2. Term of Office. Officers shall serve for a one year term and until their successors are elected. Any vacancy occurring among the officers of the Corporation may be filled by a vote of a majority of the Board of Directors. Notwithstanding the foregoing, the President may not hold office for more than two consecutive one-year terms.

Proxy.doc