UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                                    Case No.: 1-26-40732-ess

JACOB VAYNSHTEYN,                          **REPLY AFFIRMATION IN FURTHER**
                                   Debtor,          **SUPPORT OF MOTION TO ENFORCE**
                                                            **THE AUTOMATIC STAY**

-----------------------------------------------------------------X

MORRIS FATEHA, ESQ., an attorney admitted to practice before the Courts of the State

of New York and the United States District Court for the Eastern District of New York, hereby

affirms under the penalty of perjury as follows:

## PRELIMINARY STATEMENT

1. The Opposition addresses the Debtor's motion as though Jacob Vaynshteyn ("Jacob" or
   the "Debtor") were asking this Court to vacate the prepetition eviction, reinstate the
   terminated proprietary lease, place him back into possession of Apartment 19B, or
   compel Trump Village Section 4, Inc. ("TV4") to recognize him personally as a
   shareholder. This reply is intended to clarify that Debtor does not seek any of that relief.

2. Debtor accepts the binding effect of the prepetition state-court determinations concerning
   termination of the proprietary lease, the judgment of possession, the eviction, and his lack
   of standing to compel a shareholder meeting. He does not seek to occupy the Apartment,
   revive the landlord-tenant relationship, or obtain an unrestricted right to transfer
   cooperative shares in disregard of TV4's governing documents.

3. The remaining issue is narrower and materially different. It is whether TV4 could
   proceed, after Jacob's Chapter 13 petition was filed, to conduct an auction that fixed or
   extinguished the value of Jacob's prepetition beneficial and economic interest in a

specifically bequeathed cooperative apartment, without first obtaining relief from the automatic stay.

4. TV4's own Opposition establishes that this interest had substantial economic value. TV4 admits that: (a) the auction produced a $192,000 bid; (b) that bid exceeded TV4's asserted lien; (c) a surplus will remain after payment of TV4's lien and sale expenses; (d) the surplus may be payable to Anna Vaynshteyn's Estate or the Chapter 13 Trustee; and (e) no closing or formal stock transfer has occurred. Opp. ¶¶ 31, 33, 52, 57-58, 68, 77, 83, 85, 87.

5. Those admissions cannot be reconciled with TV4's repeated assertion that the cooperative interest was "worthless" when the petition was filed. Opp. ¶¶ 40, 45, 53, 56, 72, 80, 82. An asset expected to generate proceeds exceeding the secured obligation is not worthless. At minimum, it carries a contingent right to its net value. The amount may have been unliquidated before the auction, but the underlying right did not spring into existence when the auctioneer accepted a bid.

6. New York law confirms that distinction. Although record title to cooperative shares may remain with an estate pending fiduciary action and board approval, beneficial entitlement under a specific bequest passes to the specific legatee at death, subject to probate, estate administration, valid liens, and applicable transfer restrictions. *Matter of Gourary*, 2010 N.Y. Slip Op. 34133(U), at *9 (Sur. Ct. N.Y. Cnty. Nov. 1, 2010); *Matter of Mendelson (Kass)*, 2017 N.Y. Slip Op. 31497(U), at *8 (Sur. Ct. N.Y. Cnty. July 14, 2017).

7. Jacob does not seek to use bankruptcy to avoid TV4's valid lien. To the contrary, Jacob now proposes a prompt, independently marketed, court-supervised sale process under

which TV4's valid lien and authorized expenses will be paid from the sale proceeds before Jacob receives any distribution.

8. The appropriate remedy is therefore not a return to possession. It is preservation of the existing, unclosed status quo, recognition that Jacob's beneficial and economic interest entered his Chapter 13 estate, and a short opportunity to submit a properly noticed sale protocol designed to pay TV4 and maximize the remaining value for the bankruptcy estate.

## RELEVANT CLARIFICATIONS AND THE DEBTOR'S SALE COMMITMENT

9. Anna Vaynshteyn was the record owner of the shares allocated to Apartment 19B and the lessee under the corresponding proprietary lease. She died on December 31, 2020. Jacob received Letters Testamentary and serves as executor of her Estate. Opp. ¶¶ 4-6.

10. Anna's Will specifically bequeathed the Apartment and the corresponding cooperative interest to Jacob. Jacob is the sole beneficiary of that specific disposition, and no competing beneficiary claims the cooperative interest.

11. Jacob acknowledges that TV4 denied the requested transfer to him, that the proprietary lease was subsequently terminated, and that the Estate and Jacob lost their possessory rights. He does not contest those determinations in this motion.

12. Jacob also acknowledges the unfavorable history concerning the prior attempted sale. The Housing Court found that the Apartment had been listed for $599,000 despite an approximate market value of $375,000, that Jacob did not timely demonstrate a contract or sufficient progress toward a sale, and that his later assertions concerning a reduced price were not adequately documented. Opp. ¶¶ 14-22. Jacob does not ask this Court to disregard those findings.

13. The present proposal is materially different from the prior process. Jacob is no longer in possession. He is not insisting upon the prior $599,000 asking price. He is not seeking an indefinite marketing period. The sale price will be based upon current independent market evidence, the process will be subject to fixed deadlines and Court oversight, and TV4 will be paid before Jacob receives any distribution.

14. TV4 conducted the disputed auction at noon on February 17, 2026, after Jacob's petition had been filed at 11:37 a.m. and after notice had been transmitted to TV4's counsel. Opp. ¶¶ 29-31. TV4 nevertheless admits that no closing occurred and that the shares have not been formally transferred. Opp. ¶¶ 33, 77, 87.

15. TV4 further admits that, "subsequently," it exercised its right of first refusal and returned the third-party bidder's deposit. Opp. ¶ 32. Thus, the auction did not culminate in a completed transfer to the bidder, and TV4 took an additional step affecting the collateral after it indisputably knew of the bankruptcy.

17. Jacob has expressed his intent to proceed with a sale designed to maximize value as opposed to the hurried auction conducted by TV4, which resulted in a sale price of $192,000, substantially below market expectations. Jacob will incorporate this sale funding into his Chapter 13 plan pursuant to § 1322(b)(8), which expressly permits a plan to provide for payment of claims from property of the debtor or property of the estate. The proposed sale will therefore be part of the Chapter 13 treatment of the collateral, not an informal transaction outside the bankruptcy process.

18. The proposed closing statement will provide that TV4 is paid before Jacob receives any proceeds. Jacob does not ask TV4 to surrender a valid lien, finance the Chapter 13 plan, or assume the risk of nonpayment. He asks only for an opportunity, subject to a short

Court-imposed schedule, to expose the cooperative interest to the market and determine whether it will produce more than the $192,000 auction bid.

19. Jacob proposes that the marketing begin within 30 days, that a qualifying contract be obtained within 90 days, and that the transaction close within 120 days, subject to any extension expressly approved by the Court for a pending board application, Surrogate's Court proceeding, or other documented closing condition.

20. This commitment directly addresses the concerns expressed in the state-court orders. It replaces an unsupported asking price and open-ended process with independent valuation, outside supervision, objective milestones, payment of TV4, and a defined remedy if the sale does not proceed.

## ARGUMENT

**I. THE PROPOSED COURT-SUPERVISED SALE WILL PAY TV4, PRESERVE ANY SURPLUS FOR THE CHAPTER 13 ESTATE, AND AVOID ANY ATTEMPT TO REVIVE THE TERMINATED LEASE**

22. Chapter 13 expressly contemplates that a debtor may liquidate property to fund a plan. Section 1303 grants a Chapter 13 debtor the rights and powers of a trustee under § 363(b), (d), (e), (f), and (l), including the authority to propose a sale of estate property after notice and a hearing. Section 1322(b)(8) separately authorizes payment of claims from property of the debtor or property of the estate.

23. Courts applying these provisions recognize that the Chapter 13 debtor is the party authorized to propose a sale of estate property, subject to Court approval and the protections afforded to creditors. *In re Engels*, 536 B.R. 529, 536-37 (Bankr. N.D.N.Y. 2015). *Engels* declined to compel a sale where the debtor himself had not filed a sale

motion. Here, by contrast, Jacob affirmatively proposes the sale, accepts Court supervision, and commits the proceeds to payment of the lien and the Chapter 13 plan.

24. The contemplated sale would not involve Jacob purporting to convey a terminated proprietary lease or unilaterally issuing cooperative shares. TV4 itself explains that the realizable economic package consists of shares together with a lease issued to a new, approved purchaser. Opp. ¶¶ 42, 56-57, 83. The sale protocol can therefore require TV4's customary issuance of new shares and a new lease to a board-approved buyer while preserving TV4's lien and governing-document protections.

25. Jacob further recognizes that record title remains associated with Anna's Estate and that the cooperative interest was specifically bequeathed. He will obtain any authority required under the Will, EPTL § 11-1.1(b)(5), or an order of the Surrogate's Court, together with any approval required in this bankruptcy case. The requested process does not ask this Court to probate Anna's Will, administer her Estate, or dispense with TV4's transfer requirements.

26. TV4's assertion that it is not a "creditor of the Debtor" because Jacob has no personal liability does not defeat this structure. Opp. ¶ 86. The Bankruptcy Code expressly provides that a claim against the debtor includes a claim against property of the debtor. 11 U.S.C. § 102(2). A lien enforceable only against property in which the debtor holds an estate interest remains a bankruptcy claim even in the absence of personal liability. *Johnson v. Home State Bank*, 501 U.S. 78, 84-85 (1991). Recognizing TV4's in rem claim does not impose personal liability upon Jacob. It permits that claim to be satisfied from its collateral through the Chapter 13 process.

27. TV4's own figures demonstrate why a supervised marketing period is appropriate. The auction generated a $192,000 bid that exceeded TV4's lien, while the state-court record referenced by TV4 placed the Apartment's approximate market value at $375,000. Opp. ¶¶ 16, 31, 68. The difference is economically material. It may represent additional funds available for TV4, other estate obligations, Chapter 13 creditors, and ultimately Jacob.

28. A short, independently marketed process does not prejudice TV4. TV4 remains protected by its lien, its board-approval rights, the governing documents, the proposed payment waterfall, and an outside deadline. If the process fails, TV4 may request prospective relief. If the process succeeds, TV4 is paid and the collateral may generate substantially greater value.

29. The Court need not approve a final sale or detailed protocol on this reply record. The immediate relief can be limited to declaring the unclosed postpetition auction ineffective, preserving the status quo, and setting a short deadline for Jacob to file a separately noticed amended plan and sale motion. TV4, the Trustee, and all parties in interest will then have a full opportunity to review and object to the proposed broker, valuation, bidding procedures, treatment of the lien, and distribution of proceeds.

## II. JACOB'S PREPETITION BENEFICIAL AND ECONOMIC INTEREST BECAME PROPERTY OF HIS CHAPTER 13 ESTATE

30. Section 541(a)(1) includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. The Second Circuit applies that language broadly. "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative," falls within § 541. *Stadtmauer v.*

*Tulis (In re Nordlicht)*, 115 F.4th 90, 105 (2d Cir. 2024) (quoting *Chartschlaa v. Nationwide Mutual Insurance Co.*, 538 F.3d 116, 122 (2d Cir. 2008)).

31. TV4 correctly observes that state law determines the nature and extent of Jacob's underlying property rights. *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006). New York law, however, recognizes a specific legatee's beneficial entitlement even when formal title has not yet been transferred.

## A. The Probate-Estate Eligibility Cases Do Not Address Jacob's Individual Beneficial Interest

32. TV4 relies upon *In re Morris* and *In re Estate of Baer* for the proposition that a probate estate is not a "person" eligible to be a bankruptcy debtor. Opp. ¶ 34. Jacob does not dispute that proposition. It is irrelevant here because Anna's Estate did not file bankruptcy. Jacob, a living individual, filed in his individual capacity. The issue is whether his beneficial interest in property held through Anna's Estate entered his individual bankruptcy estate.

33. *McCord v. Borko (In re Borko)*, Adv. No. 12-1268, 2013 WL 5442264 (Bankr. E.D.N.Y. Sept. 29, 2013), addresses that distinct question. There, formal title to real property remained in a testamentary trust and the trustees had not distributed the property to the debtor. The EDNY Bankruptcy Court nevertheless held that the debtor's testamentary interest had vested before bankruptcy and that the debtor's share of the property, or its proceeds, was property of the bankruptcy estate. Id. at *6-9.

34. *Borko* also held that determining whether an undistributed testamentary interest is bankruptcy-estate property is a core bankruptcy function. Id. at *6. The court could interpret the will to determine the debtor's interest while remaining attentive to the limits

imposed by the probate exception. Id. at *6-7. That is the determination requested here. Jacob does not ask this Court to administer Anna's Estate. He asks the Court to determine the effect of his prepetition beneficial entitlement upon his own Chapter 13 estate.

**B. New York Law Recognizes the Beneficial Entitlement of a Specific Legatee Before Formal Transfer**

35. *Matter of Gourary* is particularly instructive because it involved a specific bequest of cooperative shares. The shares were not formally transferred to the beneficiary until approximately fifteen months after the decedent's death. The Surrogate nevertheless held that the delay in formal transfer did not leave beneficial ownership with the estate. A specific bequest passes to the legatee at death, subject to probate and any need to use the asset for valid estate expenses. 2010 N.Y. Slip Op. 34133(U), at *9.

36. *Matter of Mendelson* likewise involved a specifically bequeathed cooperative apartment. The court expressly recognized that board approval prevented formal title from passing automatically. 2017 N.Y. Slip Op. 31497(U), at *7 n.2. But the court distinguished formal title from beneficial ownership. It explained that beneficial entitlement passes automatically to the specific beneficiary, while only a "qualified legal title" remains with the fiduciary to protect the estate and fulfill the Will. Id. at *8.

37. Applied here, record title remaining in Anna's name or her Estate did not eliminate Jacob's beneficial entitlement. Nor did TV4's refusal to recognize Jacob personally as a shareholder adjudicate or extinguish that entitlement. It meant that Jacob could not obtain formal shareholder status or a proprietary lease without satisfying the governing documents and obtaining board approval.

38. Article VII, Section 3 of TV4's bylaws, quoted at Opposition paragraph 38, permits TV4 to treat its record shareholder as the holder and generally relieves it from recognizing outside equitable claims in its internal corporate dealings. That provision may govern TV4's recognition of shareholders and transfers. It does not determine whether Jacob possessed a beneficial interest under New York succession law, and it does not prevent an otherwise existing interest from entering a bankruptcy estate under § 541. See 11 U.S.C. § 541(c)(1). Jacob's estate takes the interest subject to its limitations. The limitations do not make the interest nonexistent.

## C. Lease Termination Eliminated Possession and Unilateral Control, Not the Admitted Right to Net Economic Value

39. Jacob does not dispute that cooperative shares and their proprietary lease are ordinarily inseparable, or that the lease termination eliminated the right to occupy the Apartment and the right unilaterally to transfer the shares. *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458-59 (S.D.N.Y. 1996). The Opposition is therefore correct insofar as it argues that bankruptcy did not revive Jacob's possession or restore a terminated lease.

40. But it does not follow that every economic interest disappeared. New York UCC § 9-615(d)(1), upon which TV4 itself relies, requires a secured party to account for and pay any surplus after disposition. Before disposition is completed, UCC § 9-623 also recognizes a right to redeem the collateral upon satisfaction of the secured obligation and permitted expenses. These rights existed before the auction even though their ultimate dollar value remained contingent.

41. TV4 repeatedly admits that Anna's Estate, and through it Jacob, retained the right to surplus proceeds. Opp. ¶¶ 45, 52, 56-58, 63, 82-85. TV4 also admits that the auction

price exceeded its lien. Opp. ¶ 68. Accordingly, even under TV4's own characterization of the surviving interest, the petition-date interest had positive economic value.

42. TV4's assertion that Jacob's interest did not "vest" until the auction ended, Opp. ¶ 40, confuses existence of the right with liquidation of its amount. A contingent right to receive the net proceeds of a future disposition is property under § 541. *In re Nordlicht*, 115 F.4th at 105; *Chartschlaa*, 538 F.3d at 122. The auction did not create the beneficial or surplus interest. It converted the collateral into a particular bid and purported to fix the amount of the surplus.

43. *Bell* does not authorize a secured party to make that conversion unilaterally after a bankruptcy filing. In *Bell*, the cooperative filed a motion for relief from the automatic stay and obtained Bankruptcy Court authorization before cancelling and selling the shares. 199 B.R. at 456-59. At most, *Bell* demonstrates that prepetition lease termination may establish cause for prospective relief. It does not validate TV4's decision to proceed without requesting that relief.

44. The state-court standing determination does not resolve this issue. The Supreme Court determined that Jacob lacked shareholder standing to compel a special meeting after termination of the lease. Opp. ¶¶ 23-25, 55. Jacob does not relitigate that determination. Shareholder standing under TV4's corporate documents is not identical to beneficial entitlement under a specific bequest, the right to surplus value, or the federal question of whether such interests fall within § 541.

45. Thus, whether the Court adopts Jacob's characterization of a vested beneficial interest under *Gourary* and *Mendelson*, or TV4's narrower characterization of an interest limited to surplus proceeds, the result is the same for the threshold question. Jacob possessed a

prepetition economic interest. That interest entered his Chapter 13 estate, and the postpetition auction directly affected its value.

III.   **THE POSTPETITION AUCTION AND TV4'S SUBSEQUENT EXERCISE OF ITS RIGHT OF FIRST REFUSAL VIOLATED THE AUTOMATIC STAY AND ARE VOID**

46. Once Jacob's beneficial and economic interest is recognized as property of his Chapter 13 estate, the effect of § 362 follows directly. Section 362(a)(3) stays any affirmative act to obtain possession of or exercise control over estate property, and § 362(a)(4) stays any act to enforce a lien against estate property.

47. TV4's auction was an affirmative act intended to enforce its lien, dispose of the collateral, determine the purchaser, and fix the amount of the surplus in which Jacob held a beneficial interest. It therefore affected far more than property belonging exclusively to a nondebtor probate estate.

48. The relevant timing is undisputed. Jacob filed his Chapter 13 petition at 11:37 a.m. on February 17, 2026. Notice was filed in the state proceeding at 11:44 a.m., and Jacob's counsel transmitted written notice to TV4's counsel at 11:48 a.m. The auction proceeded at noon. Opp. ¶¶ 29-31.

49. TV4 states that its counsel was present at the auction and did not see the 11:48 a.m. email until the auction was already underway. Opp. ¶ 30 n.2. Even if accepted, that assertion concerns willfulness and damages. It does not change when the automatic stay became effective or whether the postpetition auction violated it. The stay arises by operation of law upon filing, regardless of notice. *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992).

50. Moreover, the auction was not TV4's final postpetition act. TV4 admits that, "[s]ubsequently," it exercised its right of first refusal, displaced the successful bidder, and returned his deposit. Opp. ¶ 32. By then, TV4 had indisputable knowledge of the bankruptcy. Exercising the right of first refusal was a separate, intentional act that asserted control over the collateral and purported to determine who would acquire it.

51. TV4 never moved for relief from the stay before conducting the auction or exercising the right of first refusal. Nor has TV4 filed a motion under § 362(d) seeking to annul the stay and retroactively validate those acts.

52. In the Second Circuit, an act taken in violation of the automatic stay is void unless the Bankruptcy Court subsequently grants retroactive relief. *Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir. 1987). Prospective termination of the stay does not validate an earlier violation. Only annulment, granted in exceptional circumstances, has that effect. *Eastern Refractories*, 157 F.3d at 172.

53. This Court's decision in *In re Crichlow* is directly instructive. There, a creditor conducted an auction after the debtor filed Chapter 13 and later sought retroactive stay relief to validate the sale. The creditor did not have actual or constructive notice when the auction occurred, and this Court concluded that prospective stay relief likely would have been granted if timely requested. Nevertheless, the Court denied retroactive relief and held that the postpetition sale remained void. *In re Crichlow*, Case No. 24-41819-ess, ECF No. 33, at 10, 22-30 (Bankr. E.D.N.Y. Oct. 31, 2024).

54. The circumstances here present an even stronger case against retroactive validation. Written notice was transmitted before the auction; TV4 took the additional right-of-first-

refusal action after receiving notice; no closing or formal transfer occurred; the third-party deposit was returned; and no innocent purchaser presently relies upon the auction.

55. The proximity of the bankruptcy filing to the scheduled auction does not itself establish bad faith. Crichlow recognizes that bankruptcy petitions are frequently filed shortly before scheduled sales and that timing alone does not establish an improper purpose. Id. at 19-20. Here, Jacob has completed his filing obligations, attended and concluded the meeting of creditors, and now proposes a time-limited sale process intended to pay TV4.

56. The existence of equity also weighs against retroactive relief. TV4 admits that the $192,000 bid exceeded its lien and would generate surplus proceeds. Opp. ¶¶ 57-58, 68, 83-85. The Housing Court's approximate $375,000 valuation indicates that a properly marketed sale may produce materially greater value. As Crichlow explains, the presence of equity and the prospect of recovery for the debtor and other creditors weigh against retroactive validation of an unauthorized sale. ECF No. 33 at 20-21.

57. Nor has TV4 detrimentally changed its position. It returned the bidder's deposit, elected to substitute itself through the right of first refusal, and refrained from completing the transfer. Opp. ¶¶ 32-33, 77, 87. Restoring the parties to the petition-date status quo therefore requires no unwinding of a completed third-party transaction.

58. *Bell v. Alden Owners, Inc.* does not support a different result. In Bell, the cooperative filed a motion for relief from the automatic stay and obtained permission before cancelling and selling the cooperative shares. 199 B.R. 451, 456-59 (S.D.N.Y. 1996). *Bell* may support prospective relief after lease termination. It does not authorize a cooperative to conduct a postpetition sale first and seek forgiveness later.

59. Even if TV4 could have established cause for prospective relief, that would be only one consideration in deciding whether to annul the stay. Crichlow denied retroactive relief despite concluding that a timely prospective motion likely would have succeeded. ECF No. 33 at 22-30. The distinction preserves this Court's authority to decide whether, when, and upon what conditions estate property may be sold.

60. Accordingly, the February 17, 2026 auction and TV4's subsequent exercise of its right of first refusal are void and without effect. This conclusion does not reinstate the proprietary lease, restore Jacob to possession, or eliminate TV4's lien. It simply restores the parties to the position they occupied when the petition was filed and permits the collateral's disposition to proceed under Court supervision.

## IV.    THE APPROPRIATE REMEDY IS TO PRESERVE THE STATUS QUO AND ESTABLISH A SHORT, COURT-SUPERVISED SALE PROCESS

61. The relief should be tailored to the interest that the automatic stay protected. Jacob does not seek restoration to the Apartment. He seeks preservation of the collateral and its net economic value while a prompt sale process is presented to the Court.

62. Because TV4 admits that no closing or formal transfer has occurred, the status quo can be preserved by directing that TV4 refrain from completing or recording any transfer based upon the February 17, 2026 auction or the subsequent right-of-first-refusal election pending further order of this Court.

63. Jacob respectfully proposes that the parties be directed to confer immediately concerning a consensual sale protocol. If no agreement is reached, Jacob will file, within 30 days, an amended Chapter 13 plan and separately noticed sale motion addressing the broker,

market valuation, bidding procedures, board-approval process, treatment of TV4's lien, escrow of disputed amounts, and distribution of net proceeds.

64. TV4 will remain entitled to payment of its valid lien and authorized expenses before any distribution is made to Jacob. If Jacob fails to meet the Court-imposed marketing, contract, or closing deadlines, TV4 may seek prospective relief from the stay upon an appropriate record.

65. This limited relief respects every prepetition state-court determination while preserving the distinct federal interests protected by §§ 362, 541, 1303, and 1322. It also advances the objective shared by both sides: a sale that converts the cooperative interest into money, pays TV4, and distributes the remaining proceeds to the proper estate.

## V.    THE RECORD SUPPORTS AN AWARD OF ACTUAL DAMAGES

66. A willful violation under § 362(k) does not require proof that the creditor specifically intended to violate the Bankruptcy Code. A violation is willful where the creditor knows of the bankruptcy and intentionally performs the act that violates the stay. *Weber v. SEFCU* (In re Weber), 719 F.3d 72, 82-83 (2d Cir. 2013).

67. TV4 disputes whether its counsel learned of the bankruptcy before the auction began. That factual dispute does not encompass TV4's subsequent exercise of its right of first refusal. TV4 admits that the right was exercised after the auction and after notice of the bankruptcy. Opp. ¶¶ 32, 75, 77, 87.

68. TV4's belief that the stay did not apply does not make an intentional post-notice act involuntary. A good-faith legal dispute may bear upon the appropriate remedy, particularly punitive damages, but it does not alter the ordinary willfulness standard once the creditor has knowledge of the petition. *In re Weber*, 719 F.3d at 82-83.

69. Jacob has incurred attorneys' fees and costs to prevent completion of the transfer and obtain enforcement of the stay. Section 362(k)(1) expressly includes reasonable attorneys' fees and costs within recoverable actual damages. The amount may be established through a separate fee submission if the Court finds a willful violation.

70. Jacob recognizes that TV4 refrained from closing and formally transferring the shares after the dispute was presented to this Court. Opp. ¶¶ 33, 77, 87. Jacob therefore does not make punitive damages the focus of this reply. The immediate priorities are invalidation of the postpetition auction, preservation of the collateral, and implementation of a sale process that pays TV4 and maximizes the surplus.

71. Even if the Court declines to find willfulness or award damages, that would not validate the auction. Knowledge is relevant to damages under § 362(k), but the automatic stay's operation and the voidness of an unauthorized postpetition act do not depend upon willfulness.

## CONCLUSION

72. TV4's Opposition establishes that the cooperative interest was not worthless. It generated a bid exceeding TV4's lien, carries an admitted right to surplus proceeds, and has not been formally transferred. Jacob's beneficial and economic interest therefore entered his Chapter 13 estate even though the prepetition eviction eliminated possession and unilateral control.

73. Jacob does not seek to avoid payment or return to the Apartment. He seeks a short, enforceable opportunity to sell the cooperative interest under Court supervision, pay TV4 from the proceeds, and preserve the remaining value for the proper estate.

**WHEREFORE,** Jacob respectfully requests that the Court enter an Order:

a. Declaring the February 17, 2026 auction and TV4's subsequent exercise of its right of first refusal void and without effect;

b. Directing TV4 and those acting in concert with it not to complete, record, or effectuate any transfer based upon the void auction pending further order of the Court;

c. Directing the parties to confer promptly concerning a court-supervised sale protocol and authorizing Jacob to file an amended plan and separately noticed sale motion within 30 days;

d. Awarding Jacob his reasonable actual damages, including attorneys' fees and costs, in an amount established by a subsequent submission; and

e. Granting such other and further relief as the Court deems just and proper.


Dated:  Brooklyn, New York
        August 6, 2026

**LAW OFFICES OF MORRIS FATEHA**
By:    /S/ Morris Fateha, Esq.
       Morris Fateha, Esq.
       911 Avenue U
       Brooklyn, New York 11223
       (718) 627-4600
       morrisfateha@gmail.com